EDWIN PAUL BAUM *v.* STATE OF INDIANA.

[No. 875S184. Filed May 3, 1976.]

David M. Adams, Castor, Richards & Adams, of Noblesville, for appellant.

Theodore L. Sendak, Attorney General, Elmer Lloyd Whitmer, Deputy Attorney General for appellee.

PRENTICE, J.—Defendant (Appellant) was convicted by jury of murder in the second degree[1] and was sentenced to life imprisonment. His appeal to this Court presents seven issues:

1. Constitutionality of the grand jury composition.

2. Constitutionality of the petit jury composition.

3. Admissibility into evidence of testimony objected to as hearsay.

4. Admissibility into evidence of a pre-autopsy photograph of the decedent.

5. Admissibility of opinion testimony from police officers concerning the sanity of the defendant.

---

1. 35-1-54-1 [10-3404]. Murder—Second degree.—Whoever, purposely and maliciously, but without premeditation, kills any human being, is guilty of murder in the second degree, and, on conviction, shall be imprisoned in the state prison during life, or shall be imprisoned in the state prison not less than fifteen [15] nor more than twenty-five [25] years. [Acts 1905, ch. 169, § 350, p. 584; 1969, ch. 95, § 1, p. 214.]

6. Sufficiency of the evidence.
7. Correctness of certain instructions.

ISSUE I.

Under this assignment, the defendant charges that persons over sixty-five years of age were, at the time the indictment was found, systematically excluded from grand jury service in Marion County. There is nothing in the record before us to so indicate, other than the statement to that effect in the motion to correct errors. Assuming such to be fact, however, we do not see any likelihood of partiality emanating therefrom, and we are aware of no case suggesting such. The defendant has cited us to *Shack v. State*, (1972) 259 Ind. 450, 288 N.E.2d 155 for the proposition that the major requirement should be that the system of selection is not arbitrary. We do not view the exclusion of a particular group as being arbitrary, however, if there is some logical reason for such exclusion. In fact, in that case it was disclosed that the primary concern of the jury commissioners was that the people drawn for the panel were between the ages of twenty-one and sixty-five.

ISSUE II.

The defendant sought a special venire to include persons upon the petit jury who were not registered voters, alleging that he was not a registered voter and that the statute[2]

2. 33-4-5-2 [4-7104]. Selection of grand and petit jurors—Special procedure in counties exceeding 650,000 population.—Said commissioners shall immediately, from the names of legal voters and citizens of the United States on the latest tax duplicate and the tax schedules of the county, examine for the purpose of determining the sex, age and identity of prospective jurors, and proceed to select and deposit, in a box furnished by the clerk for that purpose, the names, written on separate slips of paper of uniform shape, size and color of twice as many persons as will be required by law for grand and petit jurors in the courts of the county, for all the terms of such courts, to commence with the calendar year next ensuing. Each selection shall be made as nearly as possible in proportion to the population of each county commissioner's district. In making such selections, they shall in all things observe their oath, and they shall not select the name of any person who is not a voter of the county, or who is not either a freeholder or householder, or who is to them known to be interested in or has cause pending which may be tried by a jury to be drawn from the names so selected. * * *."

which requires jurors to be registered voters denied him his constitutional right to a jury of his peers.

To restrict jury service to a special group or to exclude identifiable segments playing major roles in the community cannot be squared with the constitutional concept of a jury trial. It was so stated in *Taylor* v. *Louisiana*, (1975) 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690, 698. But the selection of petit jurors from the rolls of registered voters has never been thought to violate this principle. *United States* v. *Lewis*, (3d Cir. 1973) 472 F.2d 252; *Taylor* v. *State*, (1973) 260 Ind. 264, 295 N.E.2d 600. We are not cognizant of any prejudice in our society against those persons who elect not to participate in the election processes which conceivably could impart jury bias against an accused who happened to be among them.

ISSUE III.

Referring to preceding testimony by the witness to the effect that the defendant had told her he was going to take the decedent to the hospital, the prosecutor asked the witness, "And when was that, that he stopped the car?" The witness answered: "It was after he was supposed to have stabbed her." The defendant moved to strike the answer as hearsay, and the motion was overruled.

The answer may have been subject to a motion to strike in that the witness did not speak from first-hand knowledge. This question was not raised. The statement, however, was not hearsay which, under our rules of evidence, is an extrajudicial assertion offered into evidence to show the truth of matters asserted therein and thus resting for its value upon the credibility of the out-of-court asserter. *Harvey* v. *State*, (1971) 256 Ind. 473, 476, 269 N.E.2d 759. It is apparent that the defendant objected to the suggestion that he had stabbed the victim. However,

[Acts 1881 (Spec. Sess.), ch. 69, § 2, p. 557; 1939, ch. 132, § 1, p. 656; 1947, ch. 15, § 1, p. 58; 1959, ch. 132, § 1, p. 334; 1961, ch. 254, § 1, p. 583.]

the answer was not offered as evidence that he had. Rather, it was evidence that someone other than the witness had so accused him.

ISSUE IV.

The defendant also contends that a pre-autopsy photograph showing the nude body of the decedent from just below the waist upward should have been excluded. The picture showed a dark spot above the left breast, the location of the fatal wound. This picture was relevant to show the cause of death, and it was not unduly gruesome under *Carroll* v. *State,* (1975) 263 Ind. 696, 338 N.E.2d 264.

ISSUE V.

The defendant next asserts that proper foundations were not laid for the lay opinions of sanity given by police officers Ashton and Stout.

Officer Stout testified that he spoke to the defendant for about forty-five minutes and took his statement from him. He further stated that the defendant appeared coherent.

Officer Ashton was extensively questioned regarding his contact with the defendant. Ashton was asked how the defendant appeared, whether defendant's speech was coherent, whether defendant appeared rational, nervous, excited or angry and whether he could detect if the defendant had been drinking. Ashton was also asked how long he was with the defendant and how long the defendant had been in custody when they first met.

Traditionally, a layman has been required to state the facts upon which his opinion is based. *Cockrum* v. *State,* (1968) 250 Ind. 366, 234 N.E.2d 479; *Colee* v. *State,* (1881) 75 Ind. 511. However, we have held that it is sufficient for the layman to state that he saw and spoke upon one occasion with the person concerning whose sanity he is giving an opinion. *Warren* v. *State,* (1941) 218 Ind. 378, 33 N.E.2d 105. Anything more goes only to the weight of the opinion. *Colee, supra.*

"It seems fair to observe that the prevailing practice in respect to the admission of the opinions of non-expert witnesses may well be described, not as a rule excluding opinions, but as a rule of preference. The more concrete description is preferred to the more abstract. Moreover, it seems that the principal impact of the rule is upon the form of examination. The questions, while they cannot suggest the particular details desired, else they will be leading, must nevertheless call for the most specific account that the witness can give." McCormick, Law of Evidence, § 11 (2d Ed. 1972).

The foundations for the opinion testimony complained of met the minimal test of *Warren, supra,* the credibility of the testimony was a matter for jury assessment.

ISSUE VI.

Concerning the challenge to the sufficiency of the evidence, the defendant contends that there was a failure of proof beyond a reasonable doubt of premeditated malice and sanity. Our holding with respect to the admissibility of the testimony of Police Officers Stout and Ashton disposes of any question of sufficiency upon that issue, inasmuch as both expressed their opinion that the defendant was sane. Additionally, however, there was other lay testimony from which the jury could have found, beyond a reasonable doubt, that the defendant was sane at the time he stabbed his wife.

When the sufficiency of the evidence is raised as an issue upon appeal, this Court will consider only that evidence of probative value most favorable to the State, together with all logical and reasonable inferences which may be drawn therefrom. If such evidence and inferences would permit a reasonable trier of fact to find the existence of each element of the crime charged beyond a reasonable doubt, the verdict will not be disturbed. *Dozier* v. *State,* (1976) 264 Ind. 329, 343 N.E.2d 783; *Birkla* v. *State,* (1975) 263 Ind. 37, 323 N.E.2d 645; *Coleman* v. *State,* (1975) 264 Ind. 64, 339 N.E.2d 51; *Wilson* v. *State,* (1973) 259 Ind. 657, 291 N.E.2d 65.

The victim of the homicide was the defendant's estranged wife. On the date of the crime, the defendant was residing with his wife's sister, Shellia. On that day, the wife brought their young children to Shellia's home for care. Shellia testified that the defendant followed his wife out of the house as she left and got into the automobile with her. Then he slapped her twice across the face, drew his hand back and made a thrusting motion upon her. She jerked her hand across her left shoulder and said "No Ed, don't. The boys are watching." Shellia called the police, and when next she looked, the automobile, the defendant and his wife were gone. Subsequently, Shellia discovered that a kitchen knife measuring approximately twelve inches in length was missing from her kitchen.

Defendant and his wife were next seen a few minutes later in the automobile which was stopped momentarily in front of the house next door, where Shellia's aunt resided. The aunt was outside, and the defendant yelled to her that he was taking his wife to the hospital. It was subsequently determined that she had died from a stab wound through the left breast. In addition to the foregoing related events leading up to the tragedy, the defendant had, on prior occasions, stated that he was going to kill his wife.

The requisite premeditated malice was logically inferable from the foregoing evidence.

ISSUE VII.

Defendant challenges the correctness of the trial court's overruling of his objections to final instructions 5, 21, 22 and 28. In order that his rights may not have been prejudiced, we have reviewed the instructions together with the in-trial objections, and we find no error in the trial court's ruling. The issues sought to be raised in this connection, however, had not been treated in accordance with Appellate Rule 8.3 (A), which requires that both the instructions and the in-trial objections be set out verbatim and provides that errors not treated in accordance with the rule shall be deemed waived.

Although we do not, in this case, impose the waiver, as a matter of judicial convenience we decline to treat the matter further.

We find no reversible error, and the judgment of the trial court is affirmed.

Givan, C.J. and Arterburn and Hunter, JJ., concur. DeBruler, J., concurs in result.

NOTE.—Reported at 345 N.E.2d 831.