Gregory Joe **SLONE**, Appellant,

v.

**STATE of Indiana, Appellee.**

No. 985S349.

Supreme Court of Indiana.

Aug. 19, 1986.

Frank Stewart, Grimm & Grimm P.C., Auburn, for appellant.

Linley E. Pearson, Atty. Gen., Cheryl L. Greiner, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant-Appellant Gregory Joe Slone was found guilty by a jury in the DeKalb Superior Court of aiding in a murder, a class A felony, and aiding a robbery, a class A felony. The trial court sentenced him to a term of sixty (60) years for the aiding in a murder conviction, and thirty years for the aiding in a robbery conviction. Subsequently, and pursuant to Appellant's motion to correct errors, the trial court found that the conviction for aiding in a robbery would merge into the conviction for aiding in a murder and, accordingly, ordered that the conviction and sentence of thirty years for aiding a robbery be dismissed and held for naught. Appellant bases some of his claims of error on his robbery conviction. Since the trial court cured this error by dismissal of that conviction and sentence, we find those issues to be moot and will not consider them in this opinion. The following issues will be addressed:

1. error in sentencing;

2. denial of Appellant's motion for change of venue; and the quashing of his subpoena for media witness in the change of venue hearing; and

3. sufficiency of the evidence.

The evidence showed that on April 7, 1984, between the hours of 4:00 a.m., and 5:00 a.m., Appellant Slone, David Leon Woods, and Patrick C. Sweet, planned and carried out a break into the home of Juan Placencia at 318 South Lee Street, Garrett, Indiana. The three men planned to steal a television set and sell it for twenty-five dollars ($25). Placencia lived alone and was between seventy-five and eighty years of age. Appellant, Woods, and Sweet were drinking together when they planned the break-in. They stopped first at Woods' home and obtained a pair of white socks to use as gloves, and a baseball bat. Woods also armed himself with a knife. Entry to the home was gained by Woods' calling out to Placencia that it was he who was at the door, and that he wanted to use the phone. When Placencia opened the door to admit him, Woods stabbed Placencia with his knife. The victim was heard to say: "Oh, God, no", or "Oh, God, don't do that." The evidence later showed that Placencia was stabbed twenty-one (21) times. Woods and Appellant then entered the home while Sweet stayed outside as a lookout. The television set was near the victim when Appellant and Woods disconnected and removed it from the home. Appellant and Woods concealed the television set in a trash pickup in the alley, to be picked up later. It was recovered from the alley and sold for twenty ($20) dollars. Woods, Sweet, and Appellant then returned to Placencia's apartment to clean it up and remove any evidence. The knife, white socks, and bloody clothing were placed inside a plastic bag which was hidden in the apartment. Later that day, Appellant took the plastic bag to a bridge over a creek near Garrett and threw it in the water. Appellant subsequently showed police where he had thrown the evidence. After cleaning the apartment, the three of them then went to a local laundromat, washed their clothes and then had breakfast at a restaurant in Garrett at about 6:00 a.m. Placencia was found at about 9:48 a.m., with several slash wounds on both sides of his neck and in the temple and ear area. He died as a result of the stab wounds.

I

Appellant was charged with and convicted of murder pursuant to Ind.Code § 35–

42–1–1(2). The Legislature has provided for a term of forty (40) years for this crime, with an additional twenty (20) years added for aggravating circumstances, or ten (10) deleted for mitigating circumstances. Ind.Code § 35–50–2–3 (Burns 1985). The trial court here sentenced Appellant to sixty (60) years. Appellant claims the trial court did not sufficiently cite the rationale for this sentence.

■ The record indicates, however, the trial court carefully considered all of the criteria provided in Ind.Code § 35–38–1–7(b) and well supported its reasons for the sentence. The court found the only mitigating circumstance was that Appellant had no prior history of crime. It expressly found, however, that there were aggravating circumstances that outweighed this mitigating circumstance, namely that a lesser sentence would depreciate the seriousness of the crime, that the victim was in his mid-seventies, and that the victim was physically infirm. In his sentencing order, the trial judge also found that Appellant showed no remorse and would likely commit such a crime again if allowed to remain in society. The court therefore found that probation or a reduced sentence would be inappropriate. These were sufficient reasons to support the aggravation of Appellant's term to a period of sixty (60) years.

Appellant also contends it is cruel and unusual punishment to sentence a nineteen-year-old man to a sixty-year sentence, particularly when he did not directly commit the murder himself.

■ A sentence will not be found to be cruel and unusual punishment when it is within the General Assembly's statutory framework unless we should find said sentence to be a manifest abuse of discretion, or unless it is so unreasonable that no reasonable person would approve it. *Miles v. State* (1984), Ind., 468 N.E.2d 1040, 1041; *Almodovar v. State* (1984), Ind., 464 N.E.2d 906, 911–912; *Hoskins v. State* (1982), Ind., 441 N.E.2d 419, 429. This sentence was within the bounds of statutory limits, and we do not find it unreasonable based on the facts and circumstances of Appellant's conduct here.

## II

Appellant Slone contends the trial court erred in denying his motion for a change of venue from DeKalb County since the press coverage surrounding the crime made it impossible to receive a fair trial.

■ In order to obtain a change of venue it is incumbent upon a defendant to produce evidence of community bias or prejudice sufficient to convince the trial court that he could not obtain a fair trial in that county. *Dorton v. State* (1981), Ind., 419 N.E.2d 1289, 1294. It is not the amount of pretrial publicity that is important, but rather, a consideration of that which contains inflammatory material or misstatements or distortions of the evidence which could not be admissible at the trial. *Kappos v. State* (1984), Ind., 465 N.E.2d 1092, 1095. The question is not whether potential jurors had heard of the crime or Appellant's identification with it, but whether those potential jurors had a preconceived notion of a defendant's guilt and whether they were able to set aside that notion and render a verdict based upon the evidence. *Sage v. State* (1981), 275 Ind. 699, 700, 419 N.E.2d 1286, 1287; *Pine v. State* (1980), 274 Ind. 78, 80, 408 N.E.2d 1271, 1273, *reh.* denied (1980). It is insufficient to establish local prejudice warranting a change of venue unless there is a demonstration that jurors were unable to deliberate fairly. *Johnson v. State* (1985), Ind., 472 N.E.2d 892, 906, *reh. denied* (1985). The question of whether a change of venue is warranted lies within the trial court's sound discretion. *Hare v. State* (1984), Ind., 467 N.E.2d 7, 15; *Bauer v. State* (1983), Ind., 456 N.E.2d 414, 416.

■ Appellant here submitted over thirty newspaper articles on the subject of this crime and the involvement of himself, Woods, and Sweet. An examination of these reports shows them to be nothing more than factual accounts of the incident and the progress of the trials of the three defendants. The trial court expressly

found in its denial of a change of venue from the county for Appellant, that the newspaper accounts of the crime and trial were not overly sensational. We do not view such finding as unreasonable upon examination of these articles. Appellant does not show that jurors had difficulty in setting aside anything they had heard about the case or any preconceived notions of guilt they might have had. The only statement in his brief on this subject is:

> "Voir dire indicates that the majority of the jury panel from pretrial publicity, had formed an opinion. On numerous occasions, when a panel member was asked whether he had an opinion, he expressed his opinion as to guilt."

Other than this general statement, no numbers or examples are given.

Appellant also called several citizens from the community as witnesses. Some of those interviewed had definite opinions as to the guilt or innocence of Appellant based on what they had heard, and some of them felt Appellant could not get a fair trial in DeKalb County. There was one incident where a police officer had attempted to influence a potential juror, and this potential juror was removed from the panel. Another incident occurred during trial, when a person hollered at one of the prospective jurors to "hang him." Although this juror said she would not be in the least influenced by this remark, she was nonetheless removed from the panel and an alternate was put in her place. The trial judge very painstakingly and exhaustively examined the jurors as to their impartiality, and determined Appellant could receive a fair trial from them. *Voir dire* was carried on over a period of two days. It is apparent the trial judge very carefully and thoroughly examined this question. The trial judge did grant co-defendant Sweet a change of venue from DeKalb County since each of the three defendants was to be tried individually, and Sweet was to be the last one tried. After this trial, the trial judge also granted Wood a change of venue from the county based on the publicity attendant on the conduct of this trial, and based on the fact that the death penalty was being asked for Wood. We see no abuse of discretion in the trial court's denial of the motion for change of venue here in view of the evidence before the trial court.

█ In a related issue, Appellant claims the trial court erred in quashing a subpoena at the change of venue hearing issued to Kristine Bercaw and the Fort Wayne Newspapers, Inc. At a second hearing on a motion for change of venue on June 11, 1984, Slone issued a subpoena to Bercaw and the Fort Wayne *News Sentinel.* Bercaw is a reporter for that paper. Bercaw had written an article in the *Sentinel* regarding Judge Quinn's denial of a motion for a change of venue to Appellant, in which she reported that Quinn had told her that the motions were denied because they were not verified. It was reported further, however, that despite the omission, Quinn believed he would have kept the cases in DeKalb County because they had not been over-sensationalized by the press. Bercaw was subpoenaed to testify and bring with her all notes regarding her interview with Judge Quinn. The motion to quash was based on Ind.Code § 34–3–5–1, commonly referred to as the Indiana shield law privilege, which protects media representatives from being forced to give the sources of their news articles. Judge Quinn granted the motion to quash based on Ind.Code § 34–3–5–1. Appellant contends the subpoena should not have been quashed since the source already had been revealed in the article and no confidentiality was contemplated.

We need not decide this issue since we see no prejudice to Appellant. Any error, therefore, would be harmless. The trial judge made this same statement in open court, and we cannot see how it has any reference to the essential question of improper influence on the jury which would prejudice Appellant. We therefore find no error on this issue.

### III

Appellant finally maintains there was insufficient evidence to convict him. He con-

tends there were two common plans on the night of the crime, one to steal the television and one to kill Placencia, and that he participated only in the former plan.

It is not necessary that the evidence shows Appellant personally participated in the commission of each element of the offense. Evidence that Appellant acted in concert with those who actually physically committed the acts constituting the elements of the crime is sufficient to support a conviction on the accessory theory. *Wilson v. State* (1983), Ind., 455 N.E.2d 1120, 1123. The evidence in the present case shows Appellant, Woods, and Sweet had been drinking and smoking marijuana, and planned to steal Placencia's television. The three arrived at Placencia's residence, and in the process of stealing the television, Placencia was stabbed and died. Appellant then helped carry the television set away. This body of evidence is sufficient to sustain Appellant's conviction for aiding in a murder.

The trial court is affirmed.

GIVAN, C.J., and DeBRULER, SHEPARD and DICKSON, JJ., concur.