Gary **BURDINE**, Appellant
(Defendant Below),

v.

**STATE** of Indiana, Appellee
(Plaintiff Below).

No. 73A01–8609–CR–249.

Court of Appeals of Indiana,
First District.

July 30, 1987.

Rehearing Denied Aug. 17, 1987.

Mark W. McNeely, McNeely, Sanders & Stephenson, Shelbyville, for appellant.

Linley E. Pearson, Atty. Gen., Jay Rodia, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee.

ROBERTSON, Judge.

Defendant-appellant Gary Burdine appeals his convictions of operating a motor vehicle while his driving privileges have been suspended under IND.CODE 9–12–2[1] and leaving the scene of an accident involving serious bodily injury.[2]

We affirm Burdine's conviction of leaving the scene of an accident but reverse the conviction of the offense defined in IND. CODE 9–12–3–1, which we refer to as driving after having been adjudged an habitual traffic offender.

Burdine was charged with six offenses as the result of a traffic accident which occurred on the morning of September 29, 1985. The State subsequently dismissed the charge of driving while one's license has been suspended brought pursuant to I.C. 9–1–4–52 as well as two other charges, leaving three offenses to be tried. The jury acquitted Burdine of criminal recklessness but found him guilty of the remaining two offenses.

At trial, the court admitted into evidence a certified abstract of Burdine's driving record which indicated that Burdine had been adjudged an habitual traffic offender by the Bureau of Motor Vehicles (BMV) on May 27, 1985. Burdine conceded that he had been driving one of the vehicles involved in the traffic accident and that he had left the scene without making any effort to determine whether anyone in the other vehicle had been injured.

Burdine moved to Tennessee in April, 1985 and remained there the entire month of May, 1985. He indicated he believed his last known address at the BMV to be his father's former residence. He did not change his address with the BMV; neither did he pick up his mail at his father's residence. Burdine admitted he knew he was not permitted to drive in Indiana because his license had been suspended, presumably as a consequence of an accident which occurred on January 1, 1985. He testified however that he did not know that

---

1. IND.CODE 9–12–3–1 (Supp.1986) I.C. 9–12–2 *et seq.* provides for the suspension of driving privileges when an individual is determined to be an habitual traffic offender.

2. IND.CODE 9–4–1–40.

he had been adjudged an habitual traffic offender. The State did not present any evidence that notice had been mailed to Burdine of the adjudication.

## I.

Burdine challenges both convictions based upon the sufficiency of the evidence supporting them. With respect to the leaving the scene of an accident conviction, Burdine argues that the State failed to prove that he had knowledge of serious bodily injury to the victim.

When the sufficiency of the evidence is raised on appeal, this court will consider only that evidence most favorable to the State and all reasonable inferences to be drawn therefrom in order to determine whether a reasonable juror could have found the existence of each of the material elements of the crime charged beyond a reasonable doubt. The court can neither weigh the evidence nor pass on the credibility of witnesses. *Johnson v. State* (1980), 272 Ind. 547, 400 N.E.2d 132; *Baum v. State* (1976), 264 Ind. 421, 345 N.E.2d 831.

In *Micinski v. State* (1986), Ind., 487 N.E.2d 150, the Indiana Supreme Court considered whether knowledge of the fact that an injury accident has occurred is a necessary element of proof in a prosecution under I.C. 9–4–1–40, the legislature having omitted any culpability requirement in the statute. The court concluded that knowledge is a necessary component of the State's proof but specified that proof of actual knowledge was not necessary in order to obtain a conviction. *Id.* at 153. Rather, the jury may infer that the defendant knew that an accident occurred or that people were injured from an examination of the circumstances of the event. The court defined the knowledge requirement, indicating that where conditions are such that the driver should have known that an accident occurred or should have reasonably anticipated that the accident resulted in injury to a person, the requisite proof of

knowledge would be present. *Id.* Burdine's jury was given this definition.[3]

■ In the present case, we would be surprised if the jury had reached any conclusion but the one it did. Photographs of Burdine's vehicle taken shortly after the collision revealed the hood bent in half and pushed back toward the windshield and the grill forced toward the engine at a 45° angle. One of the investigating officers opined based upon the physical evidence at the scene that the victim's truck, which Burdine struck from behind, apparently was carried with its back end up on top of Burdine's light-colored vehicle for some distance. The evidence most favorable to the State also indicates that Burdine abandoned his vehicle when it stopped and was no longer operable. Burdine himself testified that there was no doubt in his mind that he hit the other vehicle. He told the jury that he could have been going as fast as twenty miles per hour over the thirty-mile-per-hour speed limit when he hit the victim's truck. Under these circumstances, there was substantial evidence of probative value from which the jury could have inferred that Burdine reasonably should have anticipated serious bodily injury to the occupant of the other vehicle.

With respect to the driving after having been adjudged an habitual traffic offender conviction, Burdine contends that without proof of proper notice from the BMV or some other proof that he knew he had been declared an habitual traffic offender, the State did not prove beyond a reasonable doubt that he knowingly committed any crime. The State argues only that the offense defined in I.C. 9–12–3–1 contains no mens rea component and is *malum prohibitum* in nature. Thus, the State asserts it need not show any mental element. We note that the trial court instructed the jury that knowledge was an essential element of the crime as the State had charged the offense, defining that element by reading

---

**3.** The State argues implicitly that it need only show knowledge that the accident resulted in injury to a person, rather than knowledge of serious bodily injury to a person. We do not address this question as the evidence is sufficient to support the conclusion that the defendant knew the accident involved serious bodily injury, as the jury was charged. Furthermore, the State made no objection to the instruction.

the statutory definition of "knowingly" contained in I.C. 35–41–2–2(b).

▮ I.C. 9–12–3–1 defines the offense of operating a motor vehicle while driving privileges are suspended under I.C. 9–12–2.[4] The legislature did not explicitly provide the mental state required. However, the absence of language indicating the level of culpability is not conclusive upon the question of whether guilty knowledge is an essential element of the crime.[5] *Gregory v. State* (1973), 259 Ind. 652, 291 N.E.2d 67, 68; *Lemont v. State* (1977), 265 Ind. 687, 359 N.E.2d 251 (Hunter, J. dissenting from denial of transfer). That determination is a matter of statutory construction, and is made in view of the legislative intent.[6] *Gregory, supra; State v. Kuebel* (1961), 241 Ind. 268, 172 N.E.2d 45, 47.

Our review of the statutory provisions defining the offenses related to the habitual traffic offender status reveals that knowledge of the fact of adjudication was, with the chapter's initial appearance in the code, inherent in the crime of driving after having been adjudged an habitual traffic offender, notwithstanding the legislature's

express formulation of the offense. The chapter provided for the initiation of a civil proceeding and the entering of an order to show cause why the person named should not be adjudged an habitual traffic offender. After a hearing and a finding *by the court* that the individual was the person named in the abstract of conviction and that he or she was an habitual violator, the legislature directed the court to issue an order *directing the person* not to operate a motor vehicle for a period of ten years. IC 1971, 9–4–13–4 through 9–4–13–10 (Burns Code Ed., Supp.1972). Thus, knowledge of the fact of adjudication was incorporated by nature of the process of determining the habitual traffic offender status. When the State brought a prosecution against an individual charging a violation of I.C. 9–4–13–13, 14, it was required to demonstrate not only that the person had been adjudged an habitual traffic offender by the court, but also that the individual operated a motor vehicle "while the order prohibiting such operation remain[ed] in effect."[7]

▮ Although the initial habitual traffic offender provision may be indicative of the legislature's intent to incorporate an ele-

---

4. I.C. 9–12–3–1 provides:
    (a) A person who operates a motor vehicle:
      (1) while his driving privileges are suspended under I.C. 9–12–2; or
      (2) in violation of restrictions imposed under I.C. 9–12–2;
    commits a Class D felony.
    (b) In addition to any criminal penalty, a person who is convicted of a felony under section (a) forfeits the privilege of operating a motor vehicle for life.
    I.C. 9–12–2–1 requires notice "[w]henever it appears from the records maintained in the bureau that a person's driving record brings him within the definition of an habitual traffic violator under I.C. 9–12–1–4 ... [at] the person's last known address." The notice shall inform "the person that his driving privileges will be suspended in thirty (30) days because the person is an habitual violator according to the records of the bureau." The notice must also inform the person that he may be entitled to relief under section 2 of the chapter or may seek judicial review. I.C. 9–12–2–1(c)

5. Similarly, whether an offense is one *malum prohibitum* or *malum in se* does not resolve the question of whether proof of a mens rea is excused. Our courts have construed statutory offenses *malum prohibitum* to require proof of mens rea. *See e.g. Micinski v. State* (1986), Ind.,

487 N.E.2d 150; *Noble v. State* (1967), 248 Ind. 101, 223 N.E.2d 755. *See also, Sills v. State* (1984), Ind., 463 N.E.2d 228, 241 (Givan, C.J. concurring in result) (Mere fact crime *malum prohibitum* does not obviate the necessity of presence of intent.)

6. Of course, the legislature must act within constitutional constraints in defining criminal offenses. Burdine does not allege that strict liability under these circumstances would be unconstitutional.

7. IC 1971, 9–4–13–13, 14 (Burns Code Ed., Supp. 1972) provided respectively:
    It shall be unlawful for any person who has been adjudged an habitual traffic offender under the provisions of this chapter to operate any motor vehicle, which is required to be registered, on public thoroughfares or on private property which is commonly used by the motoring public in this state while the order of the court prohibiting such operation remains in effect.
    Any person found to be an habitual traffic offender under the provisions of this chapter ... and who thereafter operates a motor vehicle in this state while the order of the court prohibiting such operation remains in effect, shall be guilty of a felony....

ment of culpability, the remainder of the legislative history provides little guidance. The determination of habitual offender status became an administrative matter within the authority of the BMV in 1983. *See,* I.C. 9–4–13–4 (Burns Code Ed., Repl.1983). Sections providing for immediate suspension were again amended and recodified, retaining the *ex parte* determination by the BMV unless the person notified the BMV within thirty days of material error. Cf IC 1971, 9–4–13–4 with 9–12–2–2 (Burns Code Ed., Supp.1984). The legislature also substituted the language "while his driving privileges are suspended" for the language "while the order of the court prohibiting operation remains in effect."[8] In light of the fact the statutory prohibition implicitly incorporated an element of culpability at the time of its inception, and in the absence of a clear expression of contrary intent in the language or subsequent history of the offense, *see Liparota v. U.S.* (1985), 471 U.S. 419, 426, 105 S.Ct. 2084, 2088, 85 L.Ed.2d 434, we invoke the canon of statutory construction which requires that ambiguity in a criminal statute be resolved in favor of the accused. *State v. McGraw* (1985), Ind., 480 N.E.2d 552, 553; *Gore v. State* (1983), Ind.App., 456 N.E.2d 1030, 1033. Accordingly, we recognize that the existence of a mens rea is the rule rather than the exception in Anglo-American jurisprudence, *Morissette v. U.S.* (1952), 342 U.S. 246, 250, 72 S.Ct. 240, 243, 96 L.Ed. 288; *U.S. v. Freed* (1971), 401 U.S. 601, 608, 614, 91 S.Ct. 1112, 1118, 1120, 28 L.Ed.2d 356; *Liparota, supra,* 471 U.S. at 426, 105 S.Ct. at 2088 (criminal offenses requiring no mens rea have a "generally disfavored status"), and hold that I.C. 9–12–3–1 requires a showing that the defendant knew or reasonably could have known that his driving privileges had been suspended as a result of his having been determined to be an habitual traffic offender. As in any other prosecution requiring proof of mens rea, the State may meet its burden of proving intent by referring to the facts and circumstances surrounding the case, among them the fact that the BMV mailed notice to the defendant. Thus, we read I.C.

9–12–3–1 as requiring that the State show either that the defendant had actual knowledge that he had been adjudged an habitual traffic offender or that notice of the impending suspension had been mailed by the commissioner of the BMV to the defendant's last known address as provided by I.C. 9–12–2–1.

■ In the present case, the State proved only that Burdine was driving on the date alleged and that an adjudication had been made four months earlier. It made no showing that notice had been mailed to Burdine. Consequently, the evidence was insufficient to permit the inference that when Burdine drove on the morning of September 29, 1985, while his driving privileges had been suspended under the habitual offender statute, he was aware of a high probability that he was engaging in the conduct prohibited by I.C. 9–12–3–1.

Finally, we note that Burdine objected to instruction 4A which informed the jury that the failure of BMV to actually notify a person he is an habitual traffic offender is not a defense. In view of our conclusion that knowledge is a necessary element of proof, the giving of this instruction was reversible error. *See Micinski, supra* at 153.

## II.

The remaining question we must consider is whether the trial court erred in denying Burdine's motion for change of venue.

■ In order to obtain a change of venue from the county, it is incumbent upon the defendant to produce evidence of community bias or prejudice sufficient to convince the trial court that he could not obtain a fair trial in the county. *Slone v. State* (1986), Ind., 496 N.E.2d 401, 404. The evidence is insufficient to establish local prejudice unless it demonstrates that the jurors were unable to deliberate fairly. Thus, the question is not whether the jurors had heard about the crime or identified the defendant with it, but whether the potential jurors had preconceived notions of the

---

8. Amended by P.L. 127–1983, § 13.

defendant's guilt and were unable to set aside those notions and render a verdict based upon the evidence adduced at trial. *Id.; Pine v. State* (1980), 274 Ind. 78, 408 N.E.2d 1271, 1272 citing *Irvin v. Dowd* (1961), 366 U.S. 717, 723, 81 S.Ct. 1639, 1643, 6 L.Ed.2d 751.

The applicant has the burden of establishing grounds for a change of venue. *Haybron v. State* (1979), 272 Ind. 190, 396 N.E.2d 891, 892. The decision rests within the trial court's sound discretion. *Id.*

Burdine admits that newspaper coverage of the crime itself probably had a minimal effect on community bias but argues that due to the extremely serious nature of the victim's injuries and the public benefits sponsored on her behalf, a fair jury could not be ensured through voir dire. Burdine also presented evidence of threats made on his life and the lives of family members, and of incidents of harassment by the victim's family.

The transcript of voir dire reveals that several members of the venire knew the victim, had some knowledge of the extent of her injuries, knew something about the circumstances of the crime or had read about the incident in the newspaper. However, of those prospective jurors who were not excused for cause by the court, only three were called into the jury box for questioning and two were excused by counsel after further inquiry. The record does not reveal whether the challenges were attributable to the defendant.

Thus, one member of the venire, who had indicated that she had read something about the incident, became a juror. This juror was not questioned further by the defendant about the extent of her exposure to inflammatory or inadmissible material. Burdine "passed" the juror for cause, did not attempt to use a peremptory challenge to remove her, or renew his motion for change of venue.

■ Burdine made no effort to demonstrate that this juror was unable to set aside any preconceived notions of guilt; neither has he affirmatively shown that he exhausted his peremptory challenges in an effort to secure a fair and impartial jury. Given Burdine's acquiescence in the jury's composition, we must conclude that no error occurred as a result of the trial court's denial of Burdine's motion for change of venue.

Judgment affirmed in part and reversed in part.

NEAL, J., concurs.

SHIELDS, P.J., concurs in part and dissents in part with separate opinion.

SHIELDS, Presiding Judge, concurring in part and dissenting in part.

I concur with the majority's affirmance of Gary Burdine's conviction for leaving the scene of an accident involving serious bodily injury.

However, I respectfully dissent from the majority's reversal of Burdine's conviction of operating a motor vehicle while his driving privileges have been suspended under Ind.Code Ann. § 9–12–2, a class D felony pursuant to Ind.Code Ann. § 9–12–3–1(a)(1) (Burns Repl.1987). The statutory elements of the offense are: 1) operating a motor vehicle and 2) at a time when the operator's driving privileges are suspended as a habitual traffic offender. The terms of IC § 9–12–3–1 do not require the State to show Burdine possessed a criminal intent to violate the law. Therefore, as in *Sewell v. State* (1983), Ind.App., 452 N.E.2d 1018, involving a conviction for driving while license was suspended [ (Ind.Code Ann. § 9–1–4–52) (Burns Repl.1987) ], "the lack of such proof [of criminal intent] is of no moment." 452 N.E.2d at 1020.[1]

---

1. If, in fact, the Commissioner of the Bureau of Motor Vehicles failed to mail the notice described in Ind.Code Ann. § 9–12–2–1 (Burns Repl.1987), Burdine's remedy is with a petition for judicial review under Ind.Code Ann. § 9–12–2–3 followed by a petition for post-conviction relief. Indiana Rule of Post-Conviction Relief 1.