Allen E. KINKADE, Appellant
(Plaintiff below),

v.

STATE of Indiana, Appellee
(Defendant below).

No. 49A02–8807–CR–274.

Court of Appeals of Indiana,
Second District.

May 3, 1989.

R. Mark Inman, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., John D. Shuman, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee.

SHIELDS, Presiding Judge.

Allen E. Kinkade appeals his conviction of operating a motor vehicle while being an habitual violator, a class A misdemeanor.[1]

We reverse.

## ISSUES

We consider two issues:

1. Whether the trial court erred in admitting into evidence State's Exhibit 1, in four parts, and referred to as Kinkade's "driving record"; and

2. Whether the evidence is sufficient to sustain Kinkade's conviction.

## FACTS

Kinkade was designated an habitual violator by the Indiana Bureau of Motor Vehicles (BMV) effective September 8, 1986, for a period of ten years. On October 3, 1986, he was operating a motorcycle when an Indianapolis police officer attempted to stop him. Kinkade wrecked his motorcycle following a one-mile chase. The officer ran a check on Kinkade's license and learned of his habitual violator status.

At Kinkade's trial, the State offered into evidence State's Exhibit 1, a four-part ex-

---

1. IC 9–12–3–1 (Supp.1984) (amended 1988). Judgment for a class A misdemeanor rather than the class D felony was entered pursuant to the alternate misdemeanor sentencing provision, IC 35–50–2–7(b) (1988). Kinkade was also charged with and convicted of resisting law enforcement; he does not challenge that conviction.

hibit with a certification page attached. The exhibit was admitted over Kinkade's hearsay objection. The prosecutor referred to Exhibit 1 as "a certified copy of Mr. Kinkade's driving record." Record at 52. In fact, Part 1 of the exhibit is the computer printout of Kinkade's driving record, at the end of which is a typewritten paragraph which reads as follows:

> Two Habitual Traffic Violator Notices of suspension were mailed on 7/30/86 to 2251 South Ransdall, Apartment 701, Indianapolis, Indiana and 1122 South Meridian Street, Indianapolis, Indiana. The first being the "official' [sic] address on file with the Bureau and the second being the "last known" address on file with the Bureau. These notices were not returned by the United States Post Office as undeliverable.

Record at 71. Part 2 is a photocopy of a BMV letter dated July 30, 1986, addressed to Kinkade at 2251 S. Ransdall, Apt. 701, in Indianapolis, notifying Kinkade of his habitual violator determination. Part 3 is a photocopy of a BMV envelope, addressed to Kinkade at 1122 South Meridian Street in Indianapolis. Part 4 is a photocopy of an undated handwritten note which reads as follows:

> HTV NOTICE mailed to Two ADDRESSES:
>
> 1.) ADDRess PRinted ON LetteR
> 2.) ADDRESS TYPED ON ENVELOPE DK

Record at 74.

Kinkade testified that he did not receive notice of the habitual offender determination, although he did receive a letter from the BMV, dated July 19, 1986, notifying him a prior license suspension had expired July 17, 1986. He introduced a copy of this letter into evidence.[2] The letter had been mailed to Kinkade at his current address, 1122 South Meridian Street, where he had resided for approximately three years. Kinkade testified he had not lived at 2251 South Ransdale Street since about 1980.[3]

## DECISION

### I. Admission of "Driving Record"

█ The trial court erred in overruling Kinkade's objections to the admission of State's Exhibit 1. The business record exception to the hearsay rule permits admission of documentary evidence

> if identified by its entrant or one under whose supervision it is kept and shown to be an original or first permanent entry, made in the routine course of business, at or near the time of the recorded transaction, by one having both a duty to so record and personal knowledge of the transaction represented by the entry.

*Brandon v. State* (1979), 272 Ind. 92, 97, 396 N.E.2d 365, 370 (quoting *American United Life Insurance Co. v. Peffley* (1973), 158 Ind.App. 29, 36–37, 301 N.E.2d 651, 656); *accord, Jones v. Marengo State Bank* (1988), Ind.App., 526 N.E.2d 709, 714. Though the business record exception "include[s] within its scope a system of keeping records stored on a computer and electronically printed out on demand," *Brandon* 272 Ind. at 98, 396 N.E.2d at 370, it does not include a computer printout with additional information *subsequently* typewritten on it, unless that information itself qualifies under the exception. The last entry on the computer printout is dated May 4, 1987. Therefore, the notation typed on it could not be an original or first permanent entry made at or near the time of the

---

**2.** Kinkade apparently had the dates reversed: the letter he introduced is dated July 17, 1986, and states that the suspension would expire on July 19, 1986. He may also have been mistaken about the meaning of the letter; it is entitled "ORDER OF SUSPENSION" and seems to be intended to notify him that his license was about to be suspended. His confusion is understandable. The letter is dated July 17, 1986, and states that his license will be suspended from July 19, 1985 until July 19, 1986, based upon a conviction which occurred on May 9, 1986. Nonetheless, the content of the letter, other than the address to which and the date on which it was sent, is irrelevant except to the extent that it affects the credibility assigned to the Bureau of Motor Vehicles and the weight afforded its records by the trier of fact.

**3.** Later Kinkade stated that "I've lived at both places but, prior to where I live now which is about five, four and a half years ago, I haven't resided on Ransburg for awhile, or Ransdale." Record at 105–06.

transaction it allegedly records, the mailing of notice of a suspension on July 30, 1986. Consequently, the typed notation does not qualify as a business record. Furthermore, there is no evidence the typewritten notation was "made in the routine course of business."[4] Rather, it most likely was "prepared solely for purposes of the trial." *Compare Bradley v. Phelps* (1970), 147 Ind.App. 349, 355, 260 N.E.2d 894, 898, *with Baker v. Wagers* (1984), Ind.App., 472 N.E.2d 218, 222 (record of test performed by laboratory in normal course of its business, but for use in litigation, held admissible), *transfer denied.*

■ A similar exception to the hearsay rule applies to official records. Properly authenticated[5] official records are admissible under a common law exception " '[w]henever there is a duty to record official doings....' " *Bader v. State* (1911), 176 Ind. 268, 276, 94 N.E. 1009 (record offered one which county auditor had statutory duty to keep) (quoting 3 Wigmore, *Evidence* at 1993).

While the official record exception is broader than that for business records, it is not sufficiently broad to include the parts of the "driving record" admitted over Kinkade's objection in this case. Neither the typewritten notation, the envelope, nor the handprinted notation is an official record.

The duty to record is commonly imposed by statute. For example, IC 11–8–2–5(a)(5), (10) imposes the duty upon the Commissioner of the Department of Correction to accept committed persons and to keep an accurate record thereof. Accordingly, correction records are official records. *Logston v. State* (1989), Ind., 535 N.E.2d 525. However, it may also arise when the nature of the office is such that the *duty* to record its doings is necessarily implied, i.e., when a record is essential to the purpose of the office. The implied duty to record must not be confused with the convenience to an office of maintaining a record.

Although numerous statutes impose upon the BMV the duty to maintain certain records such as driving records,[6] records of issued licenses,[7] and registration records,[8] there is no statute imposing the duty to maintain records of mailing of notice. Neither is such a record essential to the purpose or operation of the office. The relevant duty here is the duty to suspend licenses of habitual traffic offenders. That duty requires notice; it is not dependent upon a record being maintained that notice was mailed. Rather, a record of mailing, if maintained, is for the convenience of the BMV in leaving a paper trail to establish the fact of mailing should that act be relevant as, for example, if the act of mailing is disputed. As such, the record, if maintained, is more properly a business record, and, indeed, is admissible as such if the proper foundation is made.

Further, even if the duty to record mailing of notices could be implied, as Judge Buchanan posits, the notations in question remain inadmissible because they are not records. The typewritten notation is neither signed nor dated. The handprinted

---

4. The handwritten note (Part 4 of the exhibit) fails to meet the business record exception for the same reasons. It is doubtful whether the photocopied envelope (Part 3) has any probative value.

5. IC 34–1–17–7 (1988) provides a method of authenticating an official record, i.e., "by an official publication thereof or by a copy attested by the officer having the legal custody of the record by his deputy." Indiana Rules of Procedure, Trial Rule 44 provides an alternative means of authenticating official records. It allows attesting of *copies* by "the attestation of the keeper of said records, or books, deeds or other instruments, or official bonds, that the same are true and complete copies of the records, bonds, instruments or books, or parts thereof, in his custody," with the seal of the office keeper annexed, or if there is no seal, the certificate of the clerk of the county where the keeper resides, that the attestation is made by the proper officer.

6. "The [BMV] shall maintain an operating record for each person licensed by the department to drive a motor vehicle." IC 9–2–1–29 (1988).

7. "The [BMV] ... shall maintain suitable records of all licenses and permits issued." IC 9–1–4–36 (1988).

8. "The [BMV] shall file each application received and ... shall register the vehicle ... and keep a record thereof...." IC 9–1–4–3 (1988).

notation also is not dated, does not describe the date of the asserted conduct, and does not identify the notice or documents to which it refers. At most, the notations are recitals of what a record, such as a log book, might show. However, if such a record exists, it is unidentified and unoffered.

For all these several reasons, State's Exhibit 1 contained inadmissible hearsay. Therefore, the trial court erred in admitting Kinkade's "driving record" into evidence.

## II. Sufficiency of the Evidence

■ Kinkade next claims the evidence is insufficient to sustain his conviction. We agree.

Kinkade's specific argument is that the State failed to meet its burden of proving, beyond a reasonable doubt, an element of the crime with which he was charged: that he "knew or reasonably could have known that his driving privileges had been suspended as a result of his having been determined to be an habitual traffic offender." We agree the evidence is insufficient, but for a different reason: the record is devoid of any evidence the BMV complied with the notice requirements of IC 9–12–2–1.

In *Burdine v. State* (1987), Ind.App., 510 N.E.2d 1385, *transfer denied*, and *Stanek v. State* (1988), Ind.App., 519 N.E.2d 1263, this court concluded that an element of the offense with which Kinkade was charged is that he "knew or reasonably could have known that his driving privileges had been suspended as a result of his having been determined to be an habitual traffic offender." *Burdine*, 510 N.E.2d at 1389. Although the author of this opinion dissented in *Burdine*, the author agrees that to prove the element of suspension, there must be evidence that (1) the defendant fell within the definition of an habitual violator under IC 9–12–1–4 (1988), and (2) notice of the BMV determination was mailed to the

defendant's last known address.[9] Proof of mailing is an evidentiary prerequisite to proving the suspension is valid in that it occurred thirty days after notice was mailed; it is not an element of the offense. That evidentiary prerequisite does not appear in this record. Therefore, the evidence is insufficient to sustain Kinkade's conviction.

Judgment reversed.

BUCHANAN and SULLIVAN, JJ., concur.

9. The author of this opinion, joined by Judge Sullivan, disagrees with the holdings in *Burdine* and *Stanek* that the element includes "reasonably could have known" as an alternative to "knew". If indeed knowledge of suspension is

an element of the offense, then it is necessarily actual knowledge, though it may of course be inferred from facts reasonably supporting an inference of knowledge.