**Robert K. HARRIS, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee.**

**No. 90A02–8810–CR–399.**

Court of Appeals of Indiana, Second District.

June 14, 1990.

---

Romero & Thonert, Richard A. Thonert, Fort Wayne, for appellant.

Linley E. Pearson, Atty. Gen., Richard C. Webster, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee.

SULLIVAN, Judge.

Robert K. Harris (Harris) appeals his conviction of operating a motor vehicle after suspension pursuant to I.C. 9–12–3–1(a)(1), a class D felony.

We reverse.

On June 8, 1987, a police officer stopped Harris for driving an all-terrain cycle on South Jefferson Street, also known as State Road One, in Ossian. The officer recognized that the driver of the vehicle was Harris. The officer asked Harris to produce his driver's license. Harris could not do so. The officer informed Harris that he could not operate an all-terrain cycle on the highway. Harris was subsequently charged with unlawfully operating a vehicle while his license was suspended pursuant to a determination by the Bureau of Motor Vehicles (BMW) that Harris was an Habitual Traffic Violator.

 The dispositive issue is whether the evidence was sufficient to establish that Harris had notice that he had been adjudged to be an habitual traffic violator, and that as a result, his driver's license was suspended.

██ In *State v. Keihn* (1989) Ind., 542 N.E.2d 963, our Supreme Court held that the State is required to prove that a defendant had actual knowledge that his license was suspended in order to be convicted of driving while suspended under I.C. 9–1–4–52.[1] In so doing, the Court resolved the conflict among and between *Burdine v. State* (1989) 1st Dist. Ind.App., 510 N.E.2d

---

1. In *Keihn*, the controlling statute, I.C. 9–1–4–52(a), was quoted as follows:
 "A person may not operate a motor vehicle upon the public highways while his driving privilege, license, or permit is suspended or revoked." 542 N.E.2d at 964.
 In the present case, Harris was convicted under I.C. 9–12–3–1(a) (Burns Code Ed.Supp.1989):
 "A person who operates a motor vehicle:
 (1) While the person's driving privileges are suspended under IC 9–12–2; or
 (2) In violation of restrictions imposed under IC 9–12–2;

 commits a Class D felony."
 Neither statute contains a mental element. In determining that I.C. 9–1–4–52 requires the State to prove knowledge, the court in *Keihn* analyzed cases in which the defendant, like Harris, had been convicted under I.C. 9–12–3–1. *See e.g., Burdine v. State* (1989) 1st Dist. Ind. App., 510 N.E.2d 1385. Therefore, we interpret the *Keihn* requirement that the State prove knowledge to apply with equal force to convictions under I.C. 9–12–3–1.

1385, *Grogan v. State* (1985) 1st Dist. Ind. App., 482 N.E.2d 300, *Sewell v. State* (1983) 3d Dist. Ind.App., 452 N.E.2d 1018, and *Roberts v. State* (1979) 4th Dist., 182 Ind.App. 430, 395 N.E.2d 802.

*Burdine* held that, before a defendant could be convicted under I.C. 9–12–3–1 of driving after having been adjudged an habitual traffic offender, the State must prove that "the defendant knew or reasonably could have known that his driving privileges had been suspended as a result of having been determined to be an habitual traffic offender." *Burdine, supra,* 510 N.E.2d at 1389.

*Grogan, Sewell* and *Roberts* all held that knowledge by the defendant of the suspension of his license was not an element of driving while suspended because the statute does not provide any mental state.

■ The Supreme Court, in *Keihn* resolved the conflict in favor of a modified *Burdine* approach.[2]

"We conclude, therefore, that in a prosecution under Ind.Code § 9–1–4–52 the State must prove the defendant's knowledge of the suspension of his license. To the extent that they are inconsistent with this opinion, *Roberts, Sewell,* and *Grogan* are overruled." *Keihn, supra,* 542 N.E.2d at 968.

■ In the present case, the State, following the *Burdine* holding, attempted to prove that Harris had knowledge that his license was suspended as a result of being adjudged to be an habitual traffic offender through the introduction of State's Exhibit 1. Exhibit 1 contains four parts: a letter from the Bureau of Motor Vehicles entitled "Habitual Traffic Violator Notice of Suspension" addressed to Robert K. Harris, Box 29, Ossian IN 46777; a "Certification of Mailing" signed by Kathy Webb; the top portion of defendant's driving record containing descriptive information; and a certification by Charles E. Layton, Commissioner of the Bureau of Motor Vehicles, that

the records comprising Exhibit 1 are "full, true and complete" copies of the records as they appear in the files of the Bureau of Motor Vehicles. Record at 180. A defendant's knowledge that his license has been suspended may be inferred from proof of notice mailed by the BMV. *Keihn, supra,* 542 N.E.2d 963, 968.

At trial, the State sought to introduce Exhibit 1 as a self-authenticated, certified document. Counsel for Harris objected on the basis that the foundation for the document was insufficient.

The State argued at trial and argues here that Exhibit 1 was admissible as an official record under I.C. 34–1–17–7 and Ind.Trial Rule 44 because the exhibit was certified by the Commissioner of the Bureau of Motor Vehicles. However, in *Kinkade v. State* (1989) 2d Dist. Ind.App., 537 N.E.2d 541, we discussed the official records exception to the hearsay rule and its application to BMV records which show mailing of notice of suspension of license. There we noted that the official records exception applies only when there is a duty to record official doings. Such a duty may be provided by statute or necessarily implied, "i.e., when a record is essential to the purpose of the office." *Kinkade,* 537 N.E.2d at 543. However, with respect to notice of suspension by BMV,

"there is no statute imposing the duty to maintain records of mailing of notice. Neither is such a record essential to the purpose or operation of the office. The relevant duty here is the duty to suspend licenses of habitual traffic offenders. That duty requires notice; it is not dependent upon a record being maintained that notice was mailed. Rather, a record of mailing, if maintained, is for the convenience of the BMV in leaving a paper trail to establish the fact of mailing should that act be relevant as, for example, if the act of mailing is disputed. As such, the record, if maintained, is more

---

2. Although the *Burdine* case held that the State had to prove that the defendant knew "or reasonably could have known" (*Burdine,* 510 N.E.2d at 1389) that his license was suspended, the supreme court, in approving the *Burdine*

decision required that the State prove "knowledge." *Keihn,* 542 N.E.2d at 968. We interpret *Keihn* to require that the State prove more than mere constructive knowledge.

properly a business record, and, indeed, is admissible as such if the proper foundation is made." *Kinkade*, 537 N.E.2d at 543.

Therefore, under *Kinkade*, neither the letter containing notice to Harris of his suspension, nor the "certification" of mailing by Kathy Webb qualify as an official record. They were therefore not admissible under the official records exception to the hearsay rule merely because they were certified by the BMV to be true and accurate copies.[3]

◼ We next turn to whether the letter and certification of mailing were admissible under the business record exception to the hearsay rule. Under the business exception,

"documentary evidence is admissible if identified by its entrant or one under whose supervision it is kept and shown to be an original or first permanent entry, made in the routine course of business, at or near the time of the recorded transaction, by one having both a duty to so record and personal knowledge of the transaction represented by the entry." *Baker v. Wagers* (1984) 2d Dist. Ind. App., 472 N.E.2d 218, 221, *quoting American United Life Ins. Co. v. Peffley* (1973) 2d Dist., 158 Ind.App. 29, 36–37, 301 N.E.2d 651, 656.

*See also, Perkins v. State* (1985) Ind., 483 N.E.2d 1379. In the present case, Exhibit 1 was admitted as a self-authenticated document without testimony from a sponsoring witness. The State later called Mr. Marty Miller, Director of Safety Responsibility and Driver Improvement of the BMV. Mr. Miller's name appears on the bottom of the notice letter. Mr. Miller identified the letter as a "notification sent by [his] department to an individual on an habitual traffic violator suspension." Record at

182. On cross-examination, Mr. Miller testified that such notices are sent by first-class mail. Mr. Miller then gave the following testimony:

"Q. You have a staff or other people who mail these letters out—is that correct? You personally don't mail these letters out yourself?

A. No I don't.

Q. So looking at part three here which you identified as a letter—of your own personal knowledge, you didn't personally mail the original of that notice—did you?

A. No, it was done ...

Q. My question is—you didn't personally mail the original of that notice, did you?

A. Correct." Record at 183.

Mr. Miller was also questioned about the part of Exhibit 1 entitled "Certification of Mailing" signed by Kathy Webb.[4]

"Q. Who is Kathy Webb?

A. She is a person that works in our certification department within my department.

Q. Does she mail out these letters?

A. No she does not." Record at 184.

Mr. Miller gave the only testimony regarding the letter and the certification of mailing. Although Mr. Miller identified the letter, he did not have personal knowledge of the contents of the letter. Nor did he testify who generated the letter, whether the letter was mailed, and whether the person who generated the letter had "both a duty to so record and personal knowledge of the transaction represented by the entry." *Baker, supra*, 472 N.E.2d at 221.

The "certification" of mailing by Kathy Webb purports to prove that the letter was sent to Harris. However, Mr. Miller testified that Kathy Webb does not generally mail out notification of suspension letters.

---

3. We recognize that with the advent of *Keihn v. State, supra,* the duty of keeping a record of the mailing of suspension notices may be necessarily implied by reason of the requirement that the State prove the licensee's knowledge. Such duty, if any, however did not exist before the decision in *Keihn.*

4. The Certification of Mailing states:

*"CERTIFICATION OF MAILING*

I, Charles E. Layton, Commissioner of the Indiana Bureau of Motor Vehicles hereby certify that the attached notice of suspension was mailed to box 29, Ossian, Indiana on October 1, 1986 in the regular course of business.

Certified this 11th day of February, 1988. By Kathy Webb." Record at 180.

Therefore, there is no evidence that Kathy Webb in fact personally mailed the letter to Harris. Also, the "certification" was not made "at or near the time of the recorded transaction." *Baker, supra,* 472 N.E.2d at 221. Kathy Webb "certified" on February 11, 1988, that the notification of suspension was mailed October 1, 1986.

We therefore hold that the State did not establish an adequate foundation for the admission of Exhibit 1 to qualify the letter and the certification of mailing as exceptions to the hearsay rule under the business record exception. The admission of those parts of Exhibit 1 was error.

Without Exhibit 1, the evidence is insufficient to prove that Harris had knowledge of the suspension of his license as a result of being adjudged to be an habitual traffic offender. The judgment is therefore reversed and the cause remanded for a new trial.

SHIELDS, P.J., concurs.

BAKER, J., dissents with separate opinion.

BAKER, Judge, dissenting.

I respectfully dissent. The certified records of the Bureau of Motor Vehicles that the State offered as Exhibit 1 were admissible at Harris' trial under the official records exception to the hearsay rule.

I agree with the majority that a record is admissible under the official records exception only when the record-keeping entity is under a duty to maintain the record. *Kinkade v. State* (1989), Ind.App., 537 N.E.2d 541. I believe the BMV had a duty to maintain records of the mailing of suspension notices. This duty is implied from the Indiana Supreme Court's decision requiring the State to prove a defendant's knowledge of suspension in prosecutions for driving while license was suspended. *Keihn v. State* (1989), Ind., 542 N.E.2d 963.

In footnote 3 of the majority opinion, it is recognized that *Keihn* impliedly imposed a duty on the BMV to maintain records of the mailing of suspension notices. The majority, however, states that no such duty existed before the decision in *Keihn.* It is

with this position that I dissent. In *Keihn,* the supreme court articulated its interpretation of the current state of the law. The requirement that knowledge of suspension be proved, and therefore the implied duty to keep records of mailing of notice, always existed. In *Keihn,* the supreme court articulated the law, it did not create a new requirement or duty. On this basis, I believe the authenticated records of the BMV offered by the State were admissible under the official records exception. I would affirm the actions of the trial court.