**STATE of Indiana, Appellant (Plaintiff Below),**

v.

**Kip W. MARTIN, Appellee (Defendant Below).**

**No. 4–785 A 180.**

Court of Appeals of Indiana, Fourth District.

Nov. 14, 1985.

Rehearing Denied Dec. 17, 1985.

Linley E. Pearson, Atty. Gen., Gary Damon Secrest, Deputy Atty. Gen., Indianapolis, for appellant.

David A. Feeback, Edris, Brown & Johnson, Bluffton, for appellee.

CONOVER, Judge.

The State appeals defendant-appellee Kip W. Martin's (Martin) acquittal of a violation of IND.CODE 9-1-4-52, driving while suspended, a Class A misdemeanor.

We affirm.

ISSUES

We restate the issues presented by this appeal. They are

(a) whether the Commissioner of the Bureau of Motor Vehicles has statutory authority to suspend administratively a restricted driver's license previously issued by him for failure to maintain in force proof of financial responsibility, and

(b) if so, whether Martin was denied due process under the Fourteenth Amendment to the United States Constitution.

FACTS

The facts were stipulated by the parties.

On October 25, 1984, Martin was arrested for driving while suspended. I.C. 9–1–4–52.[1] The State claims Martin failed to prove he had a valid license. I.C. 9–1–4–52.5.[2]

Previously, the Adams County Court had convicted Martin of Driving While Intoxicated,[3] and had recommended suspension of his driver's license for the minimum period of 90 days[4] beginning October 12, 1983. The Commissioner then notified Martin his license was suspended and would remain so until he furnished proof of financial responsibility for the 3 year period prescribed by I.C. 9–11–4–12.[5] To comply with this requirement, Martin purchased high risk insurance which was issued for an initial period of 6 months. The Commissioner then issued Martin a restricted license.

Although Martin claims he continued to pay his premiums after the initial 6 months period, Martin's high risk insurance lapsed. The Commissioner then suspended Martin's restricted license without notice because of the lapse in coverage.

Later after an accident, Martin was arrested and prosecuted on the current charge of driving while suspended based upon the Commissioner's suspension of Martin's restricted license. The trial court acquitted Martin because it believed the Commissioner had no authority to suspend Martin's restricted license once it had been issued to him by the Commissioner under I.C. 9–11–4–12.

The State appeals.

DISCUSSION AND DECISION

A. *No Court-Based Authority*

■ The State first argues

In effect, the suspension by the [Adams County] Court survives past the determinate period [90 days] to either continue in force if financial responsibility is not obtained, or to be reimposed if that financial responsibility—once obtained—is not maintained during the succeeding three years.

(Appellant's Brief, pp. 11–12). Without doubt, the Adams County Court's recommended suspension period was 90 days. The Court's order so specified, and the Commissioner so notified Martin. The license in such case "shall remain suspended for the period set by the court[.]" I.C. 9–11–4–12(a)(1). The Commissioner issued Martin a restricted license *because* it had ended. No statutory or inherent authority exists which would cause the original suspension to again rise up, phoenix-like, from the ashes of the original 90 day suspension order. When it ended, it ended. Such argument is without merit.

The State next cites as authority statutory language enacted in 1963 which was excised by amendment in 1973 from a statutory section repealed in 1983. This section provided upon a drunken driving conviction, the court was required to suspend the defendant's driver's license for one year

1. I.C. 9–1–4–52 provides in part
    (a) A person shall not operate a motor vehicle upon the public highways while his driving privilege, license, or permit is suspended or revoked. A person who violates this subsection commits a Class A misdemeanor....

2. I.C. 9–1–4–52.5 provides
    In a prosecution under section 52 of this chapter, the burden is on the defendant to prove by a preponderance of the evidence that he had been issued a driving license or permit that was valid at the time of the alleged crime.

3. I.C. 9–11–2–2 reads
    Sec. 2. A person who operates a vehicle while intoxicated commits a Class A misdemeanor.

4. I.C. 9–11–3–1 says in part
    Sec. 1. (a) In addition to any criminal penalty ..., the Court shall recommend the suspension of the person's driving privileges for a fixed period of not less than ninety (90) days nor more than two (2) years....

5. I.C. 9–11–4–12 provides in part
    (b) During the three (3) years following the termination of the suspension, the commissioner of the bureau may not issue a license to the person unless that person provides and maintains proof of financial responsibility in force under I.C. 9–2–1.

and until such person shall give and maintain for a period of three years proof of financial responsibility in the manner specified ...

Acts, 1963, Ch. 282, § 1(b), p. 458, 459 (codified under former Burns § 47–2001). The State claims this language was deleted in 1973 because the Legislature believed the language above-quoted was redundant with similar provisions elsewhere in the Code. In support of this argument, it cites I.C. 9–11–4–12(b)'s reference to "I.C. 9–2–1," *cf.* note 5, and two sections there appearing, I.C. 9–2–1–4 and I.C. 9–2–1–3.

### B. *No Independent Authority Under I.C. 9–2–1–4*

■ The State argues the Commissioner has independent statutory authority to suspend drivers licenses in such cases under I.C. 9–2–1–4 because it says

(c) If the person required to furnish proof of financial responsibility in the future or if the person required to furnish the security pursuant to the provisions of this section, neglects or refuses to comply with the requirements, the commissioner shall suspend his current driving license ...

This provision has no application to the facts here. I.C. 9–2–1–4 pertains to proof of financial responsibility after an accident. No accident involving Martin had occurred prior to the Commissioner's suspension of Martin's restricted license.

### C. *Independent Authority under I.C. 9–2–1–3(c)*

Next, however, the State cites I.C. 9–2–1–3 as authority for the Commissioner's action in this case.

I.C. 9–2–1–3 says in part

(c) Upon *any reasonable ground, appearing on the records* of his department, the commissioner may *suspend*

... the *current driving license of any person* .... (Emphasis supplied).

Thus, the question is whether Martin's failure to *maintain* proof of financial responsibility for the 3 years required under I.C. 9–11–4–12(b) after being issued a restricted license pursuant to his filing of such proof constitutes a "reasonable ground, appearing on the records" of the Bureau of Motor Vehicles for the Commissioner's administrative suspension of Martin's restricted license. The State cites in support of that contention *State v. Waller* (1975), 167 Ind. App. 231, 339 N.E.2d 61, where the court by way of obiter dictim at note 6 thereof answered that query in the affirmative, *cf. Waller*, 339 N.E.2d at 68.[6] Here, we are directly confronted with this issue, however.

■ Legislative intent on this subject is not spelled out in the motor vehicle code. Therefore, we must determine the Legislature's intent because it controls. *Bunker v. National Gypsum Co.* (1982), Ind., 441 N.E.2d 8, 11, appeal dism'd. 460 U.S. 1076, 103 S.Ct. 1761, 76 L.Ed.2d 338; *Park 100 Development Co. v. Indiana Department of Revenue* (1981), Ind., 429 N.E.2d 220, 222; *Petition of Meyer* (1984), Ind.App., 471 N.E.2d 718, 720; *Daugherty v. State* (1984), Ind.App., 466 N.E.2d 46, 52. In construing statutes to determine legislative intent, we consider the object or purpose sought to be obtained by the statute. *Detterline v. Bonaventura* (1984), Ind.App., 465 N.E.2d 215, 218; *Holmes v. Review Board of Indiana Employment Security Division* (1983), Ind.App., 451 N.E.2d 83, 86.

The Legislature's purpose in enacting section I.C. 9–2–1–1, et seq. of the motor vehicle code is readily apparent. It was concerned with two things, namely,

---

**6.** Clearly, whether the Commissioner had authority to suspend a driver's license administratively for any "reasonable ground" appearing upon his department's records was not at issue in *Waller*. The opening line of its note 6 reveals "no [such] contention is made in the Appellants' [State's] brief." Thus, *Waller* has no precedential value here.

The issue in *Waller* was whether the Commissioner could suspend a driver's license for a second conviction of driving while intoxicated under a since-repealed statute where the first conviction had been neither pleaded nor proved in the trial court. The *Waller* court's answer was no, he could not.

(a) that drivers whose licenses had been suspended for driving while intoxicated would act responsibly when they lawfully returned to the highways under administratively-issued restricted licenses, and

(b) when so returned, they would be financially responsible, that is, able to pay for personal injuries or property damage caused by their negligent involvement in motor vehicle accidents,

all in the public interest. I.C. 9–11–4–12(b) requires as a condition precedent to the issuance of a restricted license, the issuee (1) file, and (2) *maintain* proof of financial responsibility "in force under I.C. 9–2–1" during the three year period therein provided.

■ Construing these two statutory sections I.C. 9–11–4–12(b) and I.C. 9–2–1–3(c) together, the purpose and intent of the Legislature in this regard is apparent: it intended to give the Commissioner the administrative authority to suspend the restricted licenses he issues in such circumstances if the issuees fail to maintain proof of financial responsibility after such restricted licenses are issued, in consonance with the public interest. Thus, an issuee's failure to maintain the required proof of financial responsibility is a "reasonable ground" for the Commissioner's administrative suspension of the miscreant's license under I.C. 9–2–1–3(c). But that is not the end of the story.

### D. *Martin Denied Fourteenth Amendment Due Process*

■ Martin, however, argues he was given no prior notice the Commissioner intended to suspend his license because he failed to keep his high risk insurance in force, nor was he given an opportunity to be heard on the subject before the Commissioner's suspension became effective.[7] Fourteenth Amendment procedural due process requires the licensee must be given the opportunity to present such defenses as are available to him at a formal hearing before his license can be suspended by the Commissioner under I.C. 9–2–1–3(c).

■ In *Bell v. Burson*, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971), the United States Supreme Court considered the administrative suspension of a preacher's driver's license under the Georgia Motor Vehicle Safety Responsibility Act. It required posting of security to cover the amount of damages claimed by an aggrieved party in the report of an accident. That statute provided for notice and hearing before suspension, but consideration of the motorist's fault or liability for the accident involved was prohibited during such hearing. The preacher claimed such prohibition denied him the procedural due process guaranteed him under the Fourteenth Amendment. The court agreed and reversed the case.

Speaking for the court, Justice Brennen said

Once [driver's] licenses are issued, ... their continued possession may become essential in pursuit of a livelihood. Suspension of issued licenses thus involves state action that adjudicates important interests of the licensees. In such cases the licenses are not to be taken away without that procedural due process required by the Fourteenth Amendment. (citing cases) This is but an application of the general proposition that relevant constitutional restraints limit state power to terminate an entitlement whether the entitlement is denominated a "right" or a "privilege." (citing cases) ...

[I]t is fundamental that except in emergency situations (and this is not one) due process requires that when a State seeks to terminate an interest such as that here involved, it must afford "notice and opportunity for hearing appropriate

---

7. Prior notice and hearing are required to satisfy due process even though this section provides for court review after the fact of an administrative suspension, *cf.* 9–2–1–3(e).

to the nature of the case" *before* the termination becomes effective. (citing cases) (emphasis in original)

402 U.S. at 539, 542, 91 S.Ct. at 1589, 1591. The same principles apply here. Martin had an important interest in his restricted license. Failure to give him notice and an opportunity to be heard before the Commissioner suspended that license under I.C. 9-2-1-3(c)'s provisions denied Martin his right to procedural due process under the Fourteenth Amendment. Thus, the Commissioner's administrative suspension was void. Being void, it could not become the basis for a valid charge of driving while suspended.

Affirmed.

YOUNG, P.J., and MILLER, J., concur.