**Marlo STANEK, Appellant
(Defendant Below),**

v.

**STATE of Indiana, Appellee
(Plaintiff Below).**

No. 71A03–8710–CR–283.

Court of Appeals of Indiana,
Third District.

March 7, 1988.

Paul James Newman, South Bend, for appellant.

Linley E. Pearson, Atty. Gen., Lisa Anne McCoy, Deputy Atty. Gen., Indianapolis, for appellee.

STATON, Judge.

Marlo Stanek was convicted by a jury of operating a motor vehicle while suspended as an habitual violator of traffic laws.[1] His two-year sentence was suspended, and he was placed on probation for two years.[2]

On appeal, Stanek raises three issues. Restated, they are:

1. Whether a police officer's testimony that the defendant had been a neighbor of his for approximately eighteen years implied that the defendant had a history of criminal activity and, if so, whether the trial court erred by admitting that testimony.

2. Whether the trial court erred by refusing to give the defendant's tendered instruction on the defense of Mistake of Fact.

3. Whether the evidence presented at trial is insufficient to support his conviction.

Affirmed.

On October 10, 1986, Stanek was driving his 1972 AMC Javelin on Olive Street in South Bend, Indiana. While driving on Olive Street, he was stopped by Corporal Thomas J. Leszcz of the South Bend Police Department. Corporal Leszcz had seen Stanek make a right turn from an inside lane without stopping for a red light, and he had noticed that a rear tail light was out.

Corporal Leszcz asked to see Stanek's driver's license; Stanek gave him a Michigan temporary permit which had been issued in January 1986 and had expired sixty days later. Corporal Leszcz ran a computer check and learned that Stanek had been issued a still valid Michigan driver's license. Stanek told the officer that his wallet and Michigan driver's license had been stolen.

A further check by Corporal Leszcz showed that the Indiana Bureau of Motor Vehicles (BMV) had determined Stanek to be an habitual violator of traffic laws under I.C. 1984, 9–12–2–1 (Burns Code Ed., 1987 Repl.)[3] and that Stanek's Indiana driver's license had been suspended from July 14, 1986, until July 14, 1996.

## I.

### Officer's Testimony

During the State's direct examination of Corporal Leszcz, he testified as follows:

Q. Now prior to this occasion had you known Mr. Stanek?

A. Yes sir.

Q. How was that?

[Defense objects. Overruled.]

Q. Officer Leszcz, let me re-ask the question. When you approached [sic] you said you knew Mr. Stanek before this occasion?

A. Yes sir.

Q. And that was because he grew up in the same—

---

**1.** I.C. 1984, 9–12–3–1 (Burns Code Ed., 1987 Repl.) provides, in pertinent part:

(a) A person who operates a motor vehicle:
 (1) While his driving privileges are suspended under I.C. 9–12–2; or
 (2) In violation of restrictions imposed under I.C. 9–12–2;
commits a class D felony....

**2.** I.C. 1976, 35–50–2–7 (Burns Code Ed., Supp. 1987).

**3.** That statute provides, in pertinent part:

(a) Whenever it appears from the records maintained in the bureau that a person's driving record brings him within the definition of an habitual violator under I.C. 9–12–1–4, the commissioner shall mail a notice to the person's last known address that informs the person that his driving privileges will be suspended in thirty [30] days because the person is an habitual violator according to the records of the bureau.

(b) Thirty [30] days after the commissioner has mailed a notice under this section, he shall suspend the person's driving privileges for:
 (1) Ten [10] years if the person is an habitual violator under I.C. 9–12–1–4(b);
 (2) Ten [10] years if the person is an habitual violator under I.C. 9–12–1–4(c); or
 (3) Five [5] years if the person is an habitual violator under I.C. 9–12–1–4(d)....

[Defense objects. Overruled.]

Q. Was that because he grew up in the same neighborhood that you did?

A. Yes sir.

Q. In fact, how long had you known him having lived in the same neighborhood?

[Defense objects. Overruled.]

A. I lived in the neighborhood personally for twenty-eight years, and Marlo lived three blocks away for I don't know how many years. Eighteen, seventeen.

Q. And do you know where he lived specifically?

A. Yes sir.

Q. Where was that?

A. Used to be—

[Defense objects. Overruled.]

A. He lived at 2530 West Linden Avenue.

Record at 68–71.

Stanek contends that his testimony should not have been admitted because Corporal Leszcz's knowledge of the defendant and his address implied to the jury that this knowledge stemmed from Stanek's involvement in other criminal activities. He then cites *Gaston v. State* (1983), Ind.App., 451 N.E.2d 360, 362–3, *trans. denied,* for the proposition that evidence of criminal activity by a defendant which is not reduced to a conviction is inadmissible if irrelevant and produced only to show the defendant's unsavory character.

However, *Gaston* is inapplicable here. Clearly, Corporal Leszcz's testimony did not include *any* reference to other criminal acts performed by Stanek. He only testified that he and Stanek had been neighbors for approximately eighteen years. According to the State, this testimony was elicited to show why the officer checked into the status of Stanek's Indiana driver's license in the first place—he was not aware that Stanek had moved to Michigan and he wondered why Stanek had a Michigan driver's license.

Stanek's argument would be more persuasive had Corporal Leszcz testified that he knew the defendant and his address "as a result of several encounters in the past." Such innuendo would leave to the jury's imagination what sort of encounters the officer was referring to—and would be more likely to imply that the defendant was involved in other criminal activities.

Stanek has failed to show how Corporal Leszcz's testimony was in any way prejudicial to his case. Thus, the trial court did not err by admitting this portion of Corporal Leszcz's testimony.

## II.

### Tendered Instruction

■ Stanek contends that he did not know at the time of his arrest that he was not allowed to drive in Indiana using a Michigan driver's license. Thus, he contends that he was entitled to the following instruction:

The defense of mistake of fact is defined as follows:

It is a defense that the person who engaged in the prohibited conduct was reasonably mistaken about a matter of fact, if the mistake negates the culpability required for commission of the offense.

The reasonable mistake about a fact must have prevented the defendant from

forming the intent to commit the offense of which he is charged, or

knowing that the offense charged was being committed, or

being reckless, as defined by law, in his conduct.

The State has the burden of disproving this defense beyond a reasonable doubt.

Record at 40.

■ In reviewing the denial of a tendered instruction, we must consider, among other things, whether the evidence supports the instruction. *Flowers v. State* (1985), Ind., 481 N.E.2d 100, 103. Here, the evidence does not support the instruction. For mistake of fact to be valid defense, the mistake must serve to negate culpability. *Smith v. State* (1985), Ind., 477 N.E.2d 857,

863.[4]

 Stanek's belief that he was allowed to drive in Indiana using a Michigan driver's license does not serve to negate culpability. There are three elements of the offense of operating a motor vehicle while suspended as an habitual violator of traffic laws. They are: (1) operating a motor vehicle; (2) while driving privileges are suspended under I.C. 9–12–2–1 (*See* I.C. 9–12–3–1); and (3) a showing that the defendant knew or reasonably could have known that his driving privileges had been suspended as a result of his having been determined to be an habitual traffic offender. *Burdine v. State* (1987), Ind.App., 510 N.E.2d 1385, 1389, *reh. denied.*

Thus, the culpability required for this offense is knowledge of one's status as an habitual traffic violator and knowledge that one's driving privileges had been suspended as a result of that status. However, Stanek does not contend that he failed to receive notice of his status as an habitual traffic violator or that he was unaware that his Indiana driver's license had been suspended. *See Burdine* at 1389. Consequently, the trial court did not err by refusing to give the tendered instruction.

### III.

#### *Sufficiency of Evidence*

Evidence presented at trial showed that (1) on October 10, 1986, Stanek was operating a motor vehicle in South Bend, Indiana; (2) the BMV had determined Stanek to be an habitual traffic violator under I.C. 9–12–2–1 and had suspended his Indiana driver's license from July 14, 1986, until July 14, 1996; and (3) notice had been sent to Stanek's last known address in June of 1986. Thus, there was sufficient evidence to support Stanek's conviction.

Affirmed.

MILLER, J., concurs.

GARRARD, P.J., concurs in part and concurs in result in part with opinion.

GARRARD, Presiding Judge, concurring in part and concurring in result in part.

I concur with the majority except as to its treatment of the court's refusal to give an instruction on mistake of fact as a defense.

The mistake Stanek urges upon us was not one of fact. It was a mistake of law. Accordingly, the instruction was properly refused since it was not supported by any evidence introduced at trial. I, therefore, concur in the result reached on this issue.

---

**4.** The mistake must also be honest and reasonable and about a matter of fact. *Id.*