STATE of Indiana, Plaintiff–Appellant,

v.

Mark G. SWAYK, Defendant–Appellee.

No. 64A03–8702–CR–40.

Court of Appeals of Indiana,
Third District.

Dec. 14, 1988.

Linley E. Pearson, Atty. Gen., Jay Rodia, Deputy Atty. Gen., Indianapolis, for plaintiff-appellant.

James V. Tsoutsouris, Valparaiso, for defendant-appellee.

GARRARD, Presiding Judge.

Mark Swayk was charged with operating a motor vehicle while his driver's license was suspended as a result of being adjudged an habitual traffic offender in violation of IC 9–12–3–1.

Swayk moved to dismiss the information for its failure to allege his knowing or intentional violation of the act. The parties stipulated that Swayk had been stopped for a routine traffic offense on July 23, 1985; that prior to that date he had been adjudged an habitual traffic offender by the Bureau of Motor Vehicles; that Swayk would testify that he had received no notice from the Bureau finding him to be an habitual traffic offender; and that the only proof the state would be able to produce concerning notice would be the testimony of certain unknown individuals that it was routine policy to send by regular mail notice of such suspensions.

Upon the motion and the stipulations of the parties the trial court granted the motion and dismissed the charge. The state appeals.

We are, thus, called upon to examine the state of the law concerning the necessity of notice or knowledge in prosecutions for driving a motor vehicle while one's license is suspended, particularly where the suspension results from a determination of habitual traffic offender status pursuant to IC 9–12–1–1 et seq.

A review of the decisions in this area discloses the following:

In *Roberts v. State* (1979), 182 Ind.App. 430, 395 N.E.2d 802 the Fourth District affirmed a conviction of driving while license suspended over the defendant's claim that he had received no notice of the suspension. The reason for the suspension does not appear in the opinion. The court initially rejected Roberts' claim stating that the Bureau of Motor Vehicles had sent notice to Roberts at the address given on his driver's license, but that the address was incorrect and Roberts had failed to keep the Bureau advised of his address as required by IC 9–1–4–36. The court also stated, however, that it was not convinced that IC 9–1–4–52 required proof of intent.

The Third District then decided *Sewell v. State* (1983), Ind.App., 452 N.E.2d 1018 (Hoffman, J. concurring in result). Sewell was convicted of driving while suspended in violation of IC 9–1–4–52. On appeal he asserted insufficiency of the evidence "because the state failed to introduce evidence that Sewell was aware that his driving privileges were, at that time, suspended." The court affirmed, stating the offense was merely *malum prohibitum* and proof of intent was unnecessary.

*Purvis v. State* (1984), Ind.App., 466 N.E.2d 736 was the first decision expressly dealing with the Habitual Traffic Offender statute. Purvis appealed his finding of habitual offender status claiming that he was not present at the court hearing and the state failed to prove that he was the person referred to in the certified abstracts provided by the Bureau. The trial court had required him to appear in its original order, but later orders continuing the hearing had not required him to be present. The First District affirmed. Citing IC 9–4–13–10 which requires a hearing on the show cause order to determine if the accused is the person named in the abstracts or is, in fact, an habitual offender, the court stated that what was required by the statute was that an accused "be given sufficient notice and opportunity to be heard in order to satisfy his due process rights." 466 N.E.2d at 738.[1]

This was followed in 1985 by *State v. Martin* (1985), Ind.App., 484 N.E.2d 1309 where the state appealed Martin's acquittal of driving while suspended under IC 9–1–4–52. The essential facts were that after a suspension Martin had secured a restricted license by the purchase of high risk insurance. When he allowed the insurance to lapse the commissioner suspended his restricted license without notice or hearing. He was then arrested and prosecuted for driving while suspended. The Fourth District affirmed, holding that due process required notice and hearing before the commissioner invoked a suspension.

Also in 1985, the First District decided *Grogan v. State* (1985), Ind.App., 482 N.E. 2d 300, *transfer denied*. There the court reversed a conviction for driving while suspended on the basis of a misplaced burden of proof. It concluded the state had the burden of proving the elements of the offense beyond a reasonable doubt. In so doing, however, citing *Sewell* and *Roberts*, the court stated that neither criminal intent to violate the law nor knowledge by the defendant of the suspension of his license were elements of the offense. 482 N.E.2d at 303.

Then in 1987 the Third District was confronted with an appeal where the defendant had been convicted of driving while suspended as an habitual offender. Pursuant to IC 9–12–3–1 he was convicted of a class D felony, sentenced to two years imprisonment and had his driver's license suspended for life. *Hunter v. State* (1987), Ind.App., 516 N.E.2d 73 (Staton, J. dissenting) *transfer denied*. The court reversed on a record which showed only that Hunter denied knowledge of his suspension and that a copy of a letter addressed to him and advising of the suspension was in the Bureau's file. Noting the statutory requirement of notice contained in IC 9–12–2–1, the majority determined that absent some

---

**1.** *See Bell v. Burson* (1971), 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 finding that procedural due process applies to proceedings to suspend issued driver's licenses whether license entitlement is deemed a right or a privilege.

additional evidence that the letter had been mailed, the evidence was insufficient.

In *Burdine v. State* (1987), Ind.App., 510 N.E.2d 1385 (Shields, J. dissenting) *transfer denied* the First District reversed a conviction for driving while suspended in consequence of an habitual offender determination. *See* IC 9–12–3–1. The facts recited by the court established that Burdine's arrest was the result of a traffic accident he was involved in on September 29, 1985. Burdine knew his license had been suspended presumably as the result of an accident he had on January 1, 1985. In April he moved to Tennessee and did not change his address with the Bureau of Motor Vehicles. He believed his last known address at the Bureau was his father's former residence although he did not pick up his mail there. The Bureau determined on May 27, 1985 that Burdine was an habitual traffic offender but Burdine testified to no knowledge of that determination. The state had presented no evidence that notice of the determination had been mailed to Burdine. The majority rejected the state's argument that the offense was *malum prohibitum* and held that IC 9–12–3–1 required a showing "that the defendant knew or reasonably could have known that his driving privileges had been suspended as a result of his having been determined to be an habitual traffic offender." 510 N.E.2d at 1389. Since there was no showing either that Burdine had actual knowledge or that the state had mailed a notice, the evidence was found insufficient.

Subsequently, in *Stanek v. State* (1988), Ind.App., 519 N.E.2d 1263 the Third District affirmed a conviction for driving while suspended as an habitual traffic offender in the face of a mistake of fact argument urged by Stanek who had procured a Michigan driver's license by the time of his arrest. In rejecting the argument, however, the court, relying on *Burdine*, recited that one of the elements of the offense was "a showing that the defendant knew or reasonably could have known that his driving

privileges had been suspended...." 519 N.E.2d at 1266.

To date our Supreme Court has not addressed the question although it did deny transfer in *Grogan* and *Burdine*. The decisions of this court may be summarized and largely reconciled.

*Sewell* is the only case which actually held notice and/or knowledge were superfluous because the statute did not require intent.[2] It was not concerned with the habitual offender statute which does contain notice requirements. It is at odds with the later decision in *Martin* which considered a due process argument and found notice and opportunity to be heard essential to a valid suspension. Furthermore, while we have not overruled *Sewell* (and need not do so today) *Hunter* and *Stanek* demonstrate a refusal to extend it to cases arising under the habitual traffic offender statute and IC 9–12–3–1.

On the other hand, *Purvis* and *Burdine* affirm some requirement of actual knowledge or attempted personal notification concerning habitual traffic offender proceedings in order for resulting suspensions to be valid.

We agree with those views. *Stanek, supra*. Not only does the statute require notice and provide for hearing and judicial review, it provides that a person found driving after being suspended as an habitual offender is guilty of a class D felony for which he might receive as much as four years imprisonment and a ten thousand dollar fine, IC 35–50–2–7, together with the loss of his driving privileges for life. IC 9–12–3–1. In addition, a person's status as an habitual offender may be based upon a series of ordinary moving traffic violations, such as speeding, accumulated over a ten year span, so long as one of the more serious offenses is included. IC 9–12–1–4. Thus, as a practical matter and even though presumed to know the law, many drivers may be quite unaware of meeting the definition of habitual violator.

**2.** Despite a footnote in *Sewell, Roberts* can be read as consistent with decisions requiring attempted notification.

**518**

We have no disagreement with the legislative determination that certain persons should lose their driving privileges because of continued bad driving records. Nor do we disagree with the determination that the Bureau of Motor Vehicles may provide the most expeditious means to make those determinations. However, common notions of justice and fair play would appear to require that a person about to be so adjudged be given notice and an opportunity to be heard. As *Roberts* teaches, if the person involved thwarts receipt of that notice by his own failure to comply with the laws for keeping the Bureau adivsed of his address, he will not be heard to complain. But evidence of nothing more than a paper in a file, *Hunter, supra,* or that some unknown person is willing to state that notifications are normally mailed, is not only insufficient as a matter of law to establish the necessary attempt to notify beyond a reasonable doubt, it suggests an unduly insensitive attitude by government towards the welfare of its citizens.

Having so said, we must also consider the procedural posture presented here.

The general rule, reflected by statute (IC 35–34–1–2(a)(4)) is that in charging an offense the information should set forth all the elements of the offense. *See Embry v. State* (1951), 229 Ind. 179, 96 N.E.2d 274. On the other hand, our decisions have held that guilty knowledge need not be specifically charged in the information unless it is an ingredient of the definition of the offense. *Appelby v. State* (1943), 221 Ind. 544, 48 N.E.2d 646, *reh. denied* 221 Ind. 544, 49 N.E.2d 533.

Guilty knowledge is not specified as an element of IC 9–12–3–1. Moreover, as determined by the court in *Burdine* and *Purvis* the requirements of notice and opportunity to be heard apply to the habitual offender proceeding which is merely the predicate for the actual prosecution under IC 9–12–3–1.

In short, we conclude that an information charging a violation under IC 9–12–3–1 need not specifically allege knowledge or notification although the state must prove actual knowledge or the effort to notify the individual accused to sustain its burden of proof at trial.

Even so, on the stipulated facts before it the court did not err in its conclusion because the court was able to properly conclude that in Swayk's case the notice requirements had not been met. *See* IC 35–34–1–8.

AFFIRMED.

HOFFMAN and STATON, JJ., concur.

