Thomas H. CRUITE, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 49S02–9411–CR–1038.

Supreme Court of Indiana.

Nov. 1, 1994.

Steven R. Jacobs, Indianapolis, for appellant.

Pamela Carter, Atty. Gen., Mary Dreyer, Deputy Atty. Gen., for appellee.

SHEPARD, Chief Justice.

In a prosecution for operating a vehicle as an habitual traffic violator, when the defendant's driving record maintained by the Bureau of Motor Vehicles indicates that the BMV has sent him suspension notices on the basis of his habitual offender status, may that record by itself satisfy the State's initial burden of proving that the defendant knew of the suspension? We hold that it may.

Like many other habitual traffic offenders, Thomas Cruite cannot seem to stay out from behind the wheel of a car. And like so many who have lost the privilege to operate a motor vehicle, he continues to put himself and others at risk by his irresponsible and unlicensed driving. Cruite's latest difficulties with the police and the BMV stem from his arrest on January 10, 1992, and his subsequent conviction for operating a motor vehicle as an habitual traffic violator. He had been convicted twice previously of operating a vehicle while an habitual offender. He now seeks to overturn his most recent conviction, asserting on appeal that the State failed to prove he had notice his license was suspended at the time of his arrest.

The Indiana Code delineates the type and number of offenses a driver must accumulate before he is classified as an habitual violator; it also outlines procedures for notifying the offender of his status. For example, two separate reckless vehicular homicides or three convictions for drag racing within a ten year period will suffice to put an offender beyond the "habitual" threshold. Ind.Code Ann. § 9–30–10–4 (West 1992). Once a person is deemed an habitual offender, § 9–30–10–5(a) directs BMV to mail a notice to his last known address informing him that his driving privileges will be suspended in thirty days. Section 5(b) requires that BMV subsequently suspend the person's license for either five or ten years, depending on the nature of the offenses upon which the habitual determination is based.

■ Driving while one's license is suspended as an habitual violator of traffic laws is a class D felony. Ind.Code Ann. § 9–30–10–16(a) (West 1992).[1] Such a conviction

---

1. This section was amended in 1993 to correct an anomaly arising from an earlier amendment. In 1991, § 9–30–10–16 replaced § 9–12–3–1, and the new language made explicit reference only to license suspensions under the new chapter ten, creating a question as to whether the new statute

also results in a lifetime forfeiture of driving privileges. *Id.* § 16(b). In order to convict someone under this section, the State must show that the driver was aware of his status as an habitual traffic offender. *State v. Keihn* (1989), Ind., 542 N.E.2d 963; *see also* Ind.Code Ann. § 9–30–10–5(a).

Thomas Cruite turned sixteen in February 1985. According to his Official Driver Record, the first suspension of his driver's license took effect in April of that year. After four months, his driving privileges were reinstated. The following July, however, his license was suspended again, this time for nearly four years. Then, barely two months after this suspension ended, his most recent suspension (this time for being an habitual traffic violator) took effect in September 1989. It was to last for five years. Though Cruite would have been eligible for reinstatement of his driving privileges as of September 1994, subsequent suspensions, including two for failure to pay for traffic violations and two for operating a vehicle as an habitual traffic violator, pushed back his reinstatement date to at least September 1997.

Cruite's most recent arrest led the State to charge him with the felony of driving while suspended as an habitual traffic violator. At trial, the State introduced a computer printout of Cruite's Official Driver Record from the BMV. It indicated that suspension notices had been mailed to Cruite at various addresses. His counsel objected that the driving record was unauthenticated and, therefore, hearsay. The court overruled the objection. After the State rested its case, the defense moved for an involuntary dismissal, arguing that the State had failed to prove that Cruite received notice of his suspended license. Relying on our opinion in *Collins v. State* (1991), Ind., 567 N.E.2d 798, the trial judge ruled that the printout had been properly admitted and that he could conclude from its contents that Cruite had notice of the suspended status of his license.

In *Collins*, we addressed the admissibility of a certification of mailing from the BMV over defendant's objection that it was hearsay. We endorsed the State's position that, since proof of mailing is an evidentiary prerequisite to establishing the validity of the suspension thirty days after notice was mailed, BMV had a duty to make a record of the mailing of the suspension notice. Consequently, the BMV's certification of mailing fell within the official records exception to the hearsay rule and was admissible.

■ The Court of Appeals reversed the trial court in this case, on different grounds, holding that the printout of Cruite's Official Driving Record did not constitute a "certification" of mailing and therefore could not by itself sustain the finding that Cruite knew his license was suspended. *Cruite v. State*, No. 49A02–9306–CR–302, slip op. at 4 (Ind.App. March 9, 1994). We disagree. In *Collins*, we held that "proof of mailing [of a notice of license suspension] is . . . permissible evidence from which a necessary element, a driver's knowledge of the suspension, may be inferred." *Collins*, 567 N.E.2d at 800. We think Cruite's Official Driving Record sufficiently evidences "proof of mailing."[2]

The Court of Appeals apparently attached significance to the fact that on this computer-generated BMV document Cruite's addresses are listed "separate and distinct" from the notations relating to the mailing of suspension notices. However, each address is assigned an ID number. Under the heading "Suspension Notices Mailed," the printout lists a description of the suspension, a separate suspension ID number, the effective date and date of mailing for that suspension, and an address ID. We have no difficulty relating the address IDs with the corresponding addresses in the separate listing of driver addresses.

also applied to suspensions under the repealed sections. We addressed this anomaly in *Holt v. State*, (1994), Ind., 638 N.E.2d 786, holding that cross-references to new code sections also refer to their old counterparts by virtue of an uncodified savings clause.

2. *See* Ind.Code Ann. § 9–14–3–7(c) ("an entry in the operating record of a defendant stating that notice of suspension or revocation was mailed by the bureau to the defendant constitutes prima facie evidence that the notice was mailed to the defendant's address as shown in the official driving record").

The trial court correctly determined that it could infer Cruite's knowledge of his license suspension from the evidence introduced by the State—the computer printout of the BMV's Official Driving Record. We grant transfer and affirm the conviction entered by the trial court.

GIVAN, DICKSON, and SULLIVAN, JJ., concur.

DeBRULER, J., concurs in result without opinion.