Anthony FIELDS, Appellant–Defendant,

v.

**STATE of Indiana, Appellee.**

No. 49A02–9503–CR–151.

Court of Appeals of Indiana.

Dec. 31, 1996.

Transfer Granted May 12, 1997.

Steven R. Jacobs, Indianapolis, for Appellant–Defendant.

Pamela Carter, Attorney General, Preston W. Black, Deputy Attorney General, Indianapolis, for Appellee.

## OPINION

SULLIVAN, Judge.

Anthony Fields (Fields) appeals his conviction for operating a motor vehicle while his driving privileges were suspended as an habitual violator of traffic laws as a class A misdemeanor.[1] Fields contends that the evidence was insufficient to prove that he knew his driving privileges had been suspended as an habitual traffic offender. This argument is framed in the context of the adequacy of notice of suspension.

We hold that there was insufficient evidence to demonstrate the requisite notice, and we therefore reverse.

On September 10, 1994, a police officer observed a motorcycle make an unsafe start through an intersection with a child on the passenger seat behind the operator. The officer pursued the vehicle. By the time the officer reached the motorcycle, it had stopped. Although the operator had dismounted before the officer arrived, Fields identified himself to the officer as the operator of the vehicle. Fields was unable to produce a driver's license, but provided the officer with sufficient information to run a computer check on Fields' driving record. This computer check revealed that Fields had been declared an habitual violator of traffic laws on November 21, 1989 and that his driving privileges were consequently suspended for a period of ten years effective June 2, 1990. The officer thus arrested Fields for operating a motor vehicle despite the fact that his driving privileges had been suspended as an habitual traffic offender.

A bench trial was conducted December 6, 1994. After hearing the testimony of both Fields and the officer, and accepting into evidence Fields' Indiana Official Driver Record as compiled by the Indiana Bureau of Motor Vehicles (BMV), the court convicted Fields of operating a motor vehicle while his driving privileges had been suspended for being adjudged an habitual traffic violator, as a class A misdemeanor. Fields was sentenced to 365 days in jail, with 265 suspended, and his driving privileges were suspended for two years in addition to the ten year suspension to which Fields has been subject since 1990.

■ The statute under which Fields was convicted, I.C. 9–30–10–16 (Burns Code Ed. Repl.1991), forbids an individual whose driving privileges have been suspended upon a determination that he is an habitual offender of traffic laws from operating a motor vehicle. The three elements of a conviction under this statute are (1) the operation of a motor vehicle; (2) while one's driving privileges are suspended as an habitual traffic law violator; and (3) a showing that the defendant knew his driving privileges had been suspended as a result of having been determined to be an habitual traffic offender. *Hendrickson v. State* (1996) Ind.App., 660 N.E.2d 1068, *trans. denied; Bishop v. State* (1994) Ind.App., 638 N.E.2d 1278, *reh'g denied.* Fields does not dispute that he was operating a motor vehicle, or that his driving privileges were in fact suspended. Rather, he contends that insufficient evidence was presented at trial to prove that he had the requisite notice of his suspension.

I.C. 9–30–10–5 (Burns Code Ed. Repl.1991) requires the BMV to mail a notice of suspension to the last known address of individuals whose driving records subject them to habit-

---

**1.** I.C. 9–30–10–16 (Burns Code Ed.1991 Repl. Vol.).

ual traffic offender status. The courts of this state have had numerous opportunities in recent years to inquire into the evidence necessary to establish the notice required. For example, our Supreme Court in *Collins v. State* (1991) Ind., 567 N.E.2d 798 held that a driver's knowledge of his suspension for habitual traffic offender status could be inferred from evidence that the BMV mailed a notice of suspension to the defendant's last known address. Building upon *Collins,* our Supreme Court subsequently held in *Cruite v. State* (1994) Ind., 641 N.E.2d 1264, that the defendant's Official Driver Record maintained by the BMV, which indicated that notification of suspension of driving privileges had been mailed by the BMV to the defendant, constituted sufficient evidence of mailing from which the defendant's knowledge of suspension could be inferred.

The situation presented here appears at first blush to be similar to that presented in *Cruite.* As in *Cruite,* Fields' Official Driver Record clearly indicates that letters of notification of suspension were mailed to Fields at different addresses. Fields' BMV records indicate that two letters of suspension were mailed to Fields on November 22, 1989, one to 233 North Parker Street, and one to 1425 North Alabama Street, both in Indianapolis. The defendant in *Cruite* unsuccessfully argued that the mere notation in BMV records that suspension notices had been mailed to the defendant at various addresses did not sufficiently evidence the mailing necessary to give rise to the inference of notice. However, Fields poses an argument apparently not forwarded in *Cruite.* Fields disputes neither the fact that his suspension letters were in fact mailed, nor that BMV records indicating that they had been mailed constitute proof of mailing. Rather, he contends that he never received notice of his suspension because he claims to have never resided at either of the two addresses to which the notices of suspension were mailed. Fields thus bases his argument that the state failed to adequately prove notice upon his assertion that the state presented insufficient evidence to prove that he had ever resided at either of the addresses to which notices of suspension were mailed.

Fields' position that the State, in order to prove notice of suspension, must prove that the defendant actually resided at the address to which a notice of suspension was mailed, does not appear to be the law in Indiana. Our Supreme Court's decisions in *Collins* and *Cruite* make it clear that proof of mailing a notice of suspension to an individual's last known address is sufficient evidence from which an inference of notice of suspension may be drawn, and that BMV records clearly indicating that a notice of suspension has been mailed to a suspended individual constitutes proof of mailing. This notion is reflected in the oft-repeated rule that proof of the BMV's mailing of a notice of suspension as required by statute is an evidentiary prerequisite to proving that a suspension is in fact valid. *See, e.g. Brown v. State* (1996) Ind.App., 668 N.E.2d 1262, *trans. granted; Kinkade v. State* (1989) Ind.App., 537 N.E.2d 541.

Predicating an inference of notice upon the mailing of suspension letters to an individual's last known address appears to be based upon the determination that concerns for administrative efficiency, along with an apparent faith in the reliability of the United States Postal Service, outweigh the need for more direct evidence of the actual notice required to sustain a conviction under I.C. 9–30–10–16. We do not, however, read our Supreme Court's implicit emphasis upon administrative efficiency to abrogate the requirement of actual notice. For while " 'proof of mailing [of a notice of license suspension] is ... permissible evidence from which a necessary element, a driver's knowledge of the suspension, may be inferred ...' ", *Cruite, supra,* 641 N.E.2d at 1265 (quoting *Collins, supra,* 567 N.E.2d at 800), proof of mailing does not itself constitute notice. It merely serves as a permissible basis from which an inference of notice may be drawn. Nor does evidence of mailing create a mandatory presumption, rebuttable or otherwise, that notice has been received, for to do so would unconstitutionally relieve the state of its burden to affirmatively prove notice. *Collins, supra* at 801. The state properly bears the burden to prove that a defendant had notice of his suspension.

To the extent that an inference of actual notice may be predicated upon proof of mailing, it appears to this court that such mailing must at the very least be reasonably calculated to provide an individual with actual knowledge of the suspension of driving privileges. Absent this minimal assurance of an attempt at actual notice, the element *of notice required to sustain a conviction* under I.C. 9–30–10–16 would be rendered meaningless. As the Court of Appeals recently recognized, "[d]ue process concerns are implicated when the State suspends drivers' licences," and that these "due process concerns dictate that one who is required to mail notice to another do so in a manner that makes it reasonably probable that the other will receive actual notice." *Brown, supra,* 668 N.E.2d at 1264. This necessarily means that the notice of suspension in question must not only be mailed in the name of the suspended individual, but must also be mailed to an address at which the individual is reasonably likely to be notified of his or her suspension.

The holdings in *Collins* and *Cruite* appear to proceed from the assumption that the BMV's statutory obligation to mail notice of suspension to the suspended individual's "last known address" sufficiently ensures a reasonable likelihood of notification. Accordingly, the State, in order to support an inference of actual notice, must demonstrate that a notice of suspension was mailed to an individual's last known address. We agree with Fields that the State failed to prove that Fields had notice of his suspension because we conclude that the state did not demonstrate that the BMV mailed a notice of suspension to Fields' "last known address" as that concept is properly understood.

As noted, Fields contends that he never resided at either 1425 North Alabama or 233 North Parker, the two addresses to which notices of suspension for habitual traffic offender status were mailed. The trial court found the evidence insufficient to demonstrate that Fields had ever resided at 1425 North Alabama, stating "... whether he ever lived [at the 1425 North Alabama address] or not, I don't know...." Record at 59. The court, however, was satisfied that Fields had resided at 233 North Parker, and concluded that the BMV's mailing of a suspension letter to Fields at the 233 North Parker address was sufficient to prove that Fields had knowledge of the suspension of his driving privileges. Fields thus challenges the trial court's finding of notice to the extent that it was based on the mailing of a letter of suspension to the 233 North Parker address.

Fields testified at trial that during November, 1989, when notices of suspension were mailed to him, he resided at 2330 North Parker. However, the arresting officer testified that when he stopped Fields in September of 1994 and requested Fields' current address, Fields stated that he resided at 233 North Parker. The trial court found, and the State argues in its brief to this court, that this evidence was sufficient to prove that Fields resided at 233 North Parker in November of 1989 and that Fields therefore had notice of his suspension. We disagree.

As explained above, in order to support an inference of notice through proof of mailing, the State must present evidence which demonstrates, at the very least, that a letter of suspension was mailed to the defendant's last known address. Moreover, it is axiomatic that the address in question must have been the defendant's last known address as of the date upon which the letters of suspension were mailed. To understand the concept of last known address to relate to any other time than the date as of which letters of suspension are mailed would render the notice requirement meaningless. The officer's testimony as to Fields' statement about his current address, assuming it to be true and not merely a post-hoc effort to conform reality to fit the BMV's records of Fields' address, was sufficient to establish that Fields considered his current address as of September 1994 to be 233 North Parker. However, we find this evidence wholly unrelated to either Fields' residence or his last mailing address as of November 22, 1989, the date the BMV mailed the letters of suspension. The State simply failed to present evidence demonstrating that 233 North Parker was Fields' last mailing address as of November 22, 1989.

The State's failure to demonstrate that the BMV mailed a notice of suspension to Fields' last known address becomes more obvious when one considers that the BMV appears to have been in possession of Fields' last known address as of November, 1989, but failed to mail a letter of suspension to him there. The Court of Appeals recently had the opportunity to inquire into the nature of the concept of "last known address" in *Brown, supra,* 668 N.E.2d 1262, which involved a challenge to the sufficiency of the State's evidence of the knowledge of suspension necessary to support a conviction for driving while an habitual traffic offender. In *Brown,* the defendant had been properly determined by the BMV to be an habitual traffic offender, and the BMV accordingly mailed a notice of suspension to the defendant at an address listed in BMV records as the defendant's residence. The defendant, however, claimed upon appeal that the mailing of a notice of suspension by the BMV to this address was not sufficient to support an inference that he had notice of his suspension because the address to which his notice of suspension was mailed was not his last known address.

The Court of Appeals in *Brown* noted that the ticket abstracts serving as the basis for the BMV's determination of habitual traffic offender status, generated two months prior to the BMV's mailing of notice, listed different addresses for the defendant than the one to which his letter of suspension was sent. Since the ticket abstracts were generated more recently than the BMV's computer records indicating residence at the address to which the letter of suspension was in fact mailed, the court determined that the more recent addresses contained in the ticket abstracts were the defendant's current addresses, and concluded, "[w]hen a current address is available to the Bureau, that address is the defendant's 'last known address' for purposes of the suspension notification statute." *Brown, supra,* 668 N.E.2d at 1265. The court therefore held that since the BMV was aware of the defendant's last known address by virtue of the ticket abstracts which listed the defendant's current address, the bureau should have mailed the notice of suspension to the defendant's current address in order to fulfill its obligation to send notice to the defendant's last known address. The court in *Brown* thus reversed the defendant's conviction for driving while an habitual traffic offender because the state failed to prove that the BMV mailed a notice of suspension to the defendant's last known address.

In our case, the three ticket abstracts serving as the basis for Fields' suspension as an habitual traffic violator list three separate addresses. None of these addresses appear in Fields' Official Driver Record, and no evidence was presented to suggest that letters of suspension were mailed to any of these addresses. The most recent ticket abstract, dated October 20, 1989 and documenting the offense which triggered Fields' suspension, lists Fields' address as "2230 Parker". Record at 46.

We agree with the implicit determination in *Brown* that an address is not necessarily an individual's "last known address" merely because BMV records indicate that an individual resides at that address. We recognize that an address listed in BMV records will undoubtedly often be an individual's last known address. However, when the BMV has notice that an individual resides at a more current address than one listed in BMV records, the more current address is in fact an individual's last known address, and the bureau may not ignore this information and rely upon outdated records. To predicate an inference of knowledge of suspension upon a letter mailed to an address other than an individual's last known address would defeat the purpose of the notice requirement. Drawing upon the reasoning in *Brown,* "2230 Parker" was Fields' last known address as of November 1989, to which the BMV was obligated to mail notice of suspension. Because the State presented no evidence that the BMV mailed a letter of suspension to the 2230 Parker address, it failed to prove that the BMV sent notice of Fields' suspension to his last known address. The State therefore failed to present sufficient evidence from which an inference of Fields' notice of his suspension could be drawn.

One might argue, although the State in its brief to this court has not done so, that

Fields' failure to comply with the statutory obligation of an individual with a driver's license to provide the BMV with current address information renders any argument as to lack of notice unavailable. I.C. 9–24–13–4 provides that if an individual holding a license to operate a motor vehicle moves from the address where the individual resided when the license was granted, the individual must "immediately notify the ... [BMV] in writing of the licensee's ... old and new address...." Judge Chezem dissented in *Brown* for this very reason, arguing that Brown, who held a valid driver's license at the time of one of the offenses supporting his status as an habitual traffic offender but neglected to keep the BMV abreast of his current address, was "in no position to complain about lack of notice." *Brown, supra,* 668 N.E.2d at 1265 (Chezem, J., dissenting).

However, I.C. 9–24–13–4 specifically applies only to "individual[s] holding a license or permit issued under this article...." The statute necessarily excludes from its coverage those who do not hold Indiana permits or driver's licenses. Judge Chezem, dissenting in *Brown*, recognized this anomaly, opining that if Brown had not held a valid licence, "I would be more inclined to vote with the majority because at that point Brown would no longer have been an individual holding a license, *and thus would have been under no duty to notify the BMV of an address change.*" *Brown, supra,* 668 N.E.2d at 1265 (Chezem, J., dissenting)(emphasis supplied). It appears from the record, from the trial court's findings, and from Fields' own brief, that Fields has never possessed a license to operate a motor vehicle in the State of Indiana, and was simply not required by the statute to make the BMV aware of a change in his address.

In summary, in order to convict an individual of the offense of driving while an habitual offender of traffic laws, the State must prove that the individual knew of his suspension. The State may support an inference that the defendant possessed this requisite knowledge through proof that the BMV mailed a notice of suspension to the individual at the individual's last known address. The State failed to prove that the BMV mailed a notice of sus-

pension to Fields' last known address, and thus presented insufficient evidence from which an inference of knowledge of suspension could be drawn.

The judgment is reversed.

HOFFMAN, J., concurs.

STATON, J., dissents and files separate opinion.

STATON, Judge, dissenting.

I dissent because the Majority misses the gravamen of the knowledge element of the crime of driving with a suspended license. Three elements must be proven by the state to establish the crime of driving with a suspended license; they are:

(1) operation of a motor vehicle; (2) while driving privileges are suspended; and "(3) a showing that the defendant knew or reasonably could have known that his driving privileges had been suspended as a result of his having been determined to be an habitual traffic offender." *Stanek v. State,* 519 N.E.2d 1263, 1266 (Ind.Ct.App.1988).

The Majority misstates the third element, demanding the state prove "that the defendant knew his driving privileges had been suspended as a result of having been determined to be an habitual traffic offender." Op. at 615. The Majority's new statement of this third element contradicts prior holdings, which require instead that the state prove "that the defendant knew or reasonably could have known that his driving privileges had been suspended ..." *Stanek, supra; Bates v. State,* 650 N.E.2d 754, 757 (Ind.Ct.App.1995); *Ruby v. State,* 549 N.E.2d 379, 380 (Ind.Ct.App.1990), *reh'g denied; Kinkade v. State,* 537 N.E.2d 541, 544 (Ind.Ct.App.1989); *Puskac v. State,* 536 N.E.2d 299, 301 (Ind.Ct.App.1989); *Burdine v. State,* 510 N.E.2d 1385, 1389 (Ind.Ct.App.1987), *trans. denied.*

Central to the knowledge element of driving with a suspended license is the simple proposition of whether the defendant knew or should have known that his license was suspended. The Majority incorrectly recasts this element as an inquiry into the mailing procedures of the Bureau of Motor Vehicles

("BMV"). But mailing of notice of license suspension is not an element of the crime. *Collins v. State*, 567 N.E.2d 798, 800 (Ind. 1991) ("[P]roof of mailing is not an actual element of the offense of operating a motor vehicle while suspended as a habitual violator. However, applying *Keihn*, we recognize it as permissible evidence from which a necessary element, a driver's knowledge of the suspension, may be inferred"); *Griffin v. State*, 654 N.E.2d 911, 912 (Ind.Ct.App.1995); *McKeown v. State*, 601 N.E.2d 462, 466 (Ind. Ct.App.1992), *trans. denied* ("First we note that proof of mailing was not an actual element of the offense of operating a motor vehicle while suspended as an habitual violator ..."); *Borton v. State*, 563 N.E.2d 182, 183 (Ind.Ct.App.1990); *Chambers v. State*, 547 N.E.2d 301, 302 (Ind.Ct.App.1989) ("Proof of mailing is not an element of the offense of operating a motor vehicle while suspended as an habitual violator of traffic laws"). The state need not prove proper mailing to prove its case. What the state must prove is that the defendant knew or should have known his driving privileges were suspended. Proof of proper mailing of notice may allow the finder of fact to infer that the defendant had the requisite knowledge, but proper mailing of notice does not mandate a conclusion, or even raise a presumption, that the defendant had knowledge of his suspension. *Collins, supra* at 801; *see also Cruite v. State*, 641 N.E.2d 1264, 1265–6 (Ind.1994).

Proof of proper mailing procedures is simply evidence to be considered by the trier of fact, as part of all the evidence of a particular case, which must be judged for credibility and reliability, sifted and weighed.[2] Likewise, absence of evidence of proper mailing procedures by the State does not foreclose a finding by the trier of fact that the defendant possessed the requisite knowledge. Presence of a defect in the BMV's mailing procedures, or lack of proof exonerating the BMV

from any possible flaw in its mailing procedures, does not automatically necessitate acquittal. Other evidence may establish the defendant's knowledge of suspension. *McKeown*, 601 N.E.2d at 466 ("Although proof of mailing will permit an inference of this knowledge, the State need only prove that the defendant had knowledge of the suspension"); *Bates, supra* (despite lack of mailed notice from BMV, conviction for driving while privileges suspended is sustained because defendant's actual knowledge could be inferred from prior convictions for driving while privileges were suspended and from defendant's statement to the arresting officer that he did not have a driver's license); *McKeown v. State*, 556 N.E.2d 3, 4 (Ind.Ct. App.1990), *trans. denied* ("Contrary to McKeown's claim, the State need not prove that notice *was sent.* Rather, this is only one method of allowing an inference that the driver *knew* that his license was suspended. 'When the Bureau of Motor Vehicles mails notice of license suspension to the defendant's last known address, proof of such notice *would allow* the trial court *to infer* a defendant's knowledge.' *State v. Keihn* (1989), Ind., 542 N.E.2d 963, 968. However, as our Supreme Court made clear: 'We conclude ... the State must prove the defendant's *knowledge* of the suspension of his license.' *Id.* Thus, a showing of *actual* knowledge of a suspended license would suffice, regardless of whether the required notice had been sent." (Emphasis in original)); *Ruby, supra* ("The State may meet its burden of proving intent by referring to the facts and circumstances surrounding the case. The State must show either that the defendant acted with knowledge he had been adjudged an habitual traffic offender or that notice of the impending suspension had been mailed by the Commissioner of the Bureau of Motor Vehicles ..."); *Wooten v. State*, 563 N.E.2d 165, 165–6 (Ind.Ct.App.1990) (convic-

---

**2.** Proof of mailing the notice of suspension of driving privileges is also an evidentiary prerequisite to establishing that driving privileges were suspended, as the suspension takes effect thirty days after the mailing. *Griffin v. State*, 654 N.E.2d 911, 912 (Ind.Ct.App.1995); *Kinkade v. State*, 537 N.E.2d 541, 544 (Ind.Ct.App.1989). This issue is unrelated to the knowledge element

of the crime, and it is not disputed in this case that notice was in fact mailed and that Fields' driving privileges were suspended. Fields argues only that there was insufficient evidence to prove that he knew, or reasonably could have known, that his driving privileges were suspended.

tion affirmed based on reasonable inference that defendant had actual knowledge that his license was suspended due to a prior verbal warning from a police officer to defendant that defendant's license was suspended, despite failure of BMV to mail notice to defendant); *State v. Keihn*, 542 N.E.2d 963, 968 (Ind.1989) ("We conclude, . . . the State must prove the defendant's knowledge of the suspension of his license. . . . At the scene the defendant was unable to produce his driver's license and told the investigating officer that his license was suspended. . . . However, the trial court found the evidence insufficient for a conviction because of the absence of proof that a notice of suspension was sent in due course by the Bureau of Motor Vehicles or that the defendant was given notice of his suspension in open court. We observe that application of the principles recognized by our opinion today would not have required an acquittal upon such evidence"); *Burdine, supra* ("As in any other prosecution requiring proof of mens rea, the State may meet its burden of proving intent by referring to the facts and circumstances surrounding the case, among them the fact that the BMV mailed notice to the defendant. Thus, we read I.C. 9–12–3–1 as requiring that the State show either that the defendant had actual knowledge that he had been adjudged an habitual traffic offender or that notice of the impending suspension had been mailed by the commissioner of the BMV . . . "). The Majority's singular focus on the BMV's mailing procedure as determinative, even to the exclusion of the testimony deduced at trial, is misdirected and erroneous.

Realizing that the knowledge element is a question of fact dependant on all the relevant evidence produced at trial, and does not turn solely upon the BMV's mailing procedure, it is well to keep in mind our standard of review for challenges to the sufficiency of the evidence supporting a conviction. As the Majority neglects to state our standard of review, it must be recited here:

> When presented with a challenge to the sufficiency of the evidence, we consider only that evidence most favorable to the State, and all reasonable inferences drawn therefrom. *Marshall v. State* (1993), Ind., 621 N.E.2d 308, 320. We will not reweigh

the evidence nor judge the credibility of the witnesses. *Id.* We will not disturb the findings made by the trier of fact if we find that there is substantial evidence of probative value to support the conviction. *Miller v. State* (1991), Ind., 563 N.E.2d 578, 581, *reh'g denied* (1991), 577 N.E.2d 587.

*Kindel v. State*, 649 N.E.2d 117, 119 (Ind.Ct. App.1995). In reviewing a case on appeal we should not substitute our reading of the record for the fact finder's weighing of evidence.

Here there was conflicting evidence as to Fields' address. Fields had stated his address variously as 233 North Parker (Record at 33), 2230 Parker (Record at 46), 2330 Parker (Record at 52), and 2330 North Parker (Record at 53), at various times. The arresting officer for the conduct from which this trial stems testified that Fields was not able to produce a driver's license when identification information was requested of him, and that Fields stated his address was 233 North Parker, one of the addresses to which notice was sent by the BMV. (Record at 33). When first asked about another address to which notice was sent by the BMV, 1425 North Alabama, Fields was ambiguous as to whether he had ever resided at that address, responding: "Uh, let's see . . . okay, it was . . . I think it was 14 . . . I moved, me and my wife, we moved and we had separated from one address to the other . . ." (Record at 52). This answer allows an inference that Fields had lived at the 1425 North Alabama address. While Fields later made an unequivocal denial that he had ever lived at this address, an inconsistency with the inference allowable from his prior testimony remained. (Record at 53). Other evidence of Fields' knowledge that his driving privileges were suspended comes from Fields' driving record, admitted into evidence at trial, which contains several convictions for driving while his license was suspended and for driving without a valid license. Prior criminal prosecutions resulting in convictions allow an inference that Fields knew his driving privileges were suspended. *Bates, supra.* Finally, Fields' driving record indicates that, although Fields was not eligible to obtain a driver's license, he did obtain, and renew, an Indiana Identification card ("ID card")

through the BMV. This evidence would also support an inference that Fields was aware that his driving privileges were suspended due to his prior convictions and that Fields therefore decided to obtain ID cards in lieu of a driver's license. There is conflicting evidence in the record, permitting conflicting inferences, but taking the evidence most favorable to the State, and all reasonable inferences drawn therefrom, there is substantial evidence of probative value to support the conviction.

It is of no moment that we would have decided the case differently had we sat as the finder of fact at the bench trial. Nor is it appropriate for a court of record to cast aspersions on the honesty and integrity of a witness ("The officer's testimony as to Fields' statement about his current address, assuming it to be true and not merely a post-hoc effort to conform reality to fit the BMV's records of Fields' address ..." Op. at 617). Even sly suggestions that a witness is not credible, and may be dissembling, is inappropriate. An appellate tribunal is poorly suited to judge the credibility of witnesses. In close cases presenting conflicting testimony, it should cause this court to pause if we find ourselves reweighing witness credibility in reaching our decision.

A separate issue the Majority dismisses cursorily is Fields' own role in preventing receipt of notice. Where a defendant "has himself disabled the Bureau from giving proper notice" the defendant "is in no position to complain about lack of notice." *Roberts v. State,* 182 Ind.App. 430, 395 N.E.2d 802, 803 (1979), *overruled on other grounds by State v. Keihn,* 542 N.E.2d 963 (Ind.1989). Such a defendant "has demonstrated no concern about whether or not the Bureau had his correct address" and entreats the court to "place a premium on deception." *Id. See also State v. Swayk,* 531 N.E.2d 515, 518 (Ind.Ct.App.1988) ("As *Roberts* teaches, if the person involved thwarts receipt of that notice by his own failure to comply with the laws for keeping the Bureau advised of his address, he will not be heard to complain"); *Brown v. State,* 668 N.E.2d 1262, 1265 (Ind. Ct.App.1996), *transf. granted.* The Majority reasons that because Fields did not have an

Indiana driver's license, he was under no compunction to keep the BMV informed of his address. It should first be noted that Fields did possess an Indiana ID card, issued by the BMV, as reflected on his driver's record. IND. CODE § 9–24–16–7 requires the holder of an ID card to correct the information on the ID card by applying for a duplicate card containing correct information within thirty days of a change in the card holder's address. Fields failed to keep his information accurate and up-to-date as statutorily required, thus the holdings of *Roberts* and *Swayk* should apply. More fundamentally, however, and even in the absence of a statutory mandate to keep his information recorded with the BMV accurate, the record reveals a continuous pattern of "flaunting the law" by Fields in driving without a license, and driving while under court order that his driving privileges are suspended, as Fields' several convictions for this offense attest. *McKeown,* 601 N.E.2d at 464. Yet despite these convictions, Fields persists in driving not only illegally, but also dangerously, and he persists in obfuscating pertinent information, such as his address, from the BMV. Now Fields seeks to interpose his own deceit as a defense. A defendant such as Fields who himself "thwarts receipt" of notice should not be heard to complain of lack of receipt of that notice. *Swayk, supra.* Therefore, I dissent and would affirm the trial court.