
FILED

Aug 13 2020, 8:59 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Alexander L. Hoover
Law Office of Christopher G. Walter, P.C.
Nappanee, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Myriam Serrano
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Tyson Daishan King, *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, *Appellee-Plaintiff* | August 13, 2020 <br><br> Court of Appeals Case No. 20A-CR-6 <br><br> Appeal from the Marshall Superior Court <br><br> The Honorable Dean A. Colvin, Judge <br><br> Trial Court Cause No. 50D02-1811-CM-1205 |

**May, Judge.**

[1] Tyson Daishan King appeals his conviction of Class A misdemeanor driving while suspended.[1] He presents two issues on appeal which we consolidate and

---

[1] Ind. Code § 9-24-19-2.

restate as whether the State presented sufficient evidence that King committed Class A misdemeanor driving while suspended. We reverse.

## Facts and Procedural History

[2] At approximately 11:30 a.m. on October 24, 2018, Indiana State Police Trooper Jonathan Hart pulled King over for driving seventy miles per hour in a fifty mile per hour speed zone. When Trooper Hart ran King's driver's license through the Indiana State Police Region 6 dispatch database, he received a report that indicated King's license was suspended for failure to pay child support. King claimed he had no knowledge of the suspension, but Trooper Hart issued a summons for King to appear in court.

[3] On November 15, 2018, the State charged King with Class A misdemeanor driving while suspended and Class C infraction speeding,[2] and the case proceeded to a bench trial on October 30, 2019. The State presented evidence that the BMV sent a Notice of Suspension to King's last known address on July 31, 2018. In addition, the State presented a certified copy of King's driving record from the BMV, which outlined that King was suspended effective "8/30/2018" with an expiration date of "10/24/2018." (State's Exhibit 2 & 3.) During trial Trooper Hart testified that when he ran King's driver's license on the day of the traffic stop, the BMV report he received from Region 6 indicated

---

[2] Ind. Code § 9-21-5-2(a) & (b).

that King was "suspended effective 2018/08/30 indefinite, for child support." (Tr. Vol. II at 13.)

[4] On December 3, 2019, the trial court issued its order entering convictions on both counts for King, but it amended that order on December 5, 2019, to correct the amount of court costs. In its amended order, the trial court referenced the BMV manual, which defines the meaning of expiration as "the date the suspension ends." (App. Vol. II. at 63.) During King's trial, the trial court also recognized that the certified BMV record was the "best evidence" of King's driving privileges. (Tr. Vol. II. at 30.) As such, the trial court ruled that King was still suspended through October 24, 2018, because the expiration date listed on the certified BMV record was the last day of the suspension. The trial court imposed a fine of $20 for the infraction and a driver's license suspension of ninety days, a fine of $25 dollars, and court costs of $185.50 for the Class A misdemeanor.

# Discussion and Decision

[5] When reviewing the sufficiency of the evidence to support a conviction, we consider only the probative evidence and reasonable inferences supporting the trial court's decision. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). It is solely the initial fact-finder's role to evaluate witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction, and thus we consider conflicting evidence in the light most favorable to the trial court's ruling. *Jones v. State*, 783 N.E.2d 1132, 1139 (Ind. 2003). We will affirm a

conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt, *id.*, and we reverse only "when the record contains no facts to support [it] either directly or by inference." *Quillen v. Quillen,* 671 N.E.2d 98, 102 (Ind. 1996).

[6] In order to convict King of driving while suspended, the State had to prove beyond a reasonable doubt that King "operate[d] a motor vehicle upon a highway," while knowing that his "driving privileges, driver's license, or permit [was] suspended or revoked," and that the operation of the vehicle was within "ten years after the date on which judgment was entered against [him] for a prior unrelated violation." Ind. Code § 9-24-19-2. King argues his license was not suspended on the day of the traffic stop based on the expiration date of his suspension.[3]

[7] King argues that when he was pulled over for a speeding violation on October 24, 2018, his suspension had already ended that day and, therefore, he cannot be found guilty of driving while suspended.[4] King takes issue with the trial court's reasoning because, if affirmed, it would establish that "the expiration

---

[3] King also asserts he had no knowledge of the suspension. However, the certified BMV record indicates the notice of suspension was sent to King's address of record on July 31, 2018, and this is sufficient evidence from which to infer King's knowledge. *See Cruite v. State*, 641 N.E.2d 1264, 1265 (Ind. 1994) (certified BMV record demonstrating notice sent is sufficient proof of knowledge).

[4] King also challenges the validity of his suspension because he was not required to pay any fines or reinstatement fees in order to reinstate his driving privileges. He asserts that, if the suspension had been legitimate, "[he] would have had to pay fines and/or reinstatement fees" and that the alleged suspension is illegitimate because "he was not required to do anything further to receive his license." (Br. of Appellant at 8.) King's official BMV record does list "0.00" under the "fees" heading. (State's Exhibit 2.) However, that is also written for the other thirty suspensions King has listed on his record. We decline to hold that a suspension indicated on King's certified driving record did not exist simply because King claims he was not required to pay a fine or fee when the suspension ended.

date would not be the ending date of the suspension . . . and that the suspension would run through the suspension date and would expire at 12:00 a.m. on the date immediately after the expiration date." (Br. of Appellant at 7.) The State conversely argues that King's suspension expired at the end of the day on October 24, 2018, thus King's driver's license was not valid until beginning of the day on October 25, 2018. Consequently, the primary issue in this appeal is when "expiration" occurs – whether the listed expiration date is the last full day that the suspension runs through, thereby ending at 11:59 p.m. that day, or whether the suspension ends at 12:00 a.m. on the listed date and is no longer in effect from the beginning of that day.

[8] King's certified BMV driving record includes all of the information that we know about his suspension.[5] Specifically, the suspension at issue in this case, suspension ID 31 shows: (1) that King was suspended per BMV record; (2) that the reason King was suspended was due to delinquent child support; (3) the mail date of the suspension notice was July 31, 2018; (4) the effective date of the suspension was August 30, 2018; and (5) the expiration date of the suspension was October 24, 2018. As a guide, the "How to Read an Indiana Bureau of Motor Vehicle (BMV) Official Driver Record" manual further explains that "the definition of the expiration date is defined as 'the date the

---

[5] The record before us does not contain a copy of the Notice of Suspension issued by the BMV, nor does it contain the order of suspension by the Title IV–D agency to the BMV with any accompanying terms for reinstatement. Due to the lack of evidence in the record, it is unclear why October 24, 2018, was the end date of King's suspension or why the BMV placed that date in his official driving record. We recognize, however, that as our role is different than that assigned to the trial court, we can consider only the evidence introduced at trial and not speculate as to the missing information.

suspension ends.'" *See* "How to Read an Indiana Bureau of Motor Vehicle (BMV) Official Driver Record," https://perma.cc/7B6J-6PPA (Indiana Bureau of Motor Vehicles, published December 8, 2014, effective legend for driver records printed on or after December 4, 2014).

[9] We first note that neither King, the State, nor the trial court, provided any relevant case law or legal reasoning for their preferred time of expiration of the suspension. In fact, the primary resource referenced by all was the BMV manual, which does not clarify when on the date listed the BMV considers a suspension to have ended. We further note that there is no Indiana case on point that clarifies when a suspension of a driver's license ends if there is an absence of guiding language included in the certified BMV driving record apart from the word "expiration" and when there is no reference to an administrative order outlining the specific length of a suspension period. Thus, this question is an issue of first impression for this court and we begin our analysis by looking to rules and caselaw regarding expiration of other time periods.

[10] A broader overview of case law and statutory authority pertaining to computation of time generally reveals that the common law rule, which was also adopted in Indiana statutes and Rules of Procedure, is that in computing a period of time, "the day of the act, event, or default from which the designated period of time begins to run shall not be included. The last day of the period so computed is to be included." Indiana Trial Rule 6(A).[6] This method of

---

[6] Trial Rule 6(A) is applicable in administrative, civil, and criminal trial proceedings; this rule also governs when a statute is silent on time limitation or computation. *See* 27 Ind. Law Encyc. Time § 7.

computation is also adopted by the Indiana Rules of Appellate Procedure Rule 25, Indiana Code section 4-21.5-3-2 which governs administrative procedures and orders, and Indiana Code Section 34-7-5-1 which governs civil law and procedure. Such rules and statutes exemplify that the general rule in Indiana is that "when computing the time for performance of an act which must take place within a certain number of days of some triggering event, the day of the triggering even is not included." *Dobeski v. State*, 64 N.E.3d 1257, 1261 (Ind. Ct. App. 2016). *See, e.g., Mockford v. Iles*, 217 Ind. 137, 26 N.E.2d 42 (1940) (motion for new trial); *Local Union No. 403 v. Demetrakopoulos*, 215 Ind. 452, 19 N.E.2d 466 (1939) (interlocutory orders); *Pacific Mut. Life Ins. Co. v. Alsop*, 191 Ind. 638, 134 N.E. 290 (1922) (expiration of insurance policy); *Bowen v. Julius,* 141 Ind. 310, 40 N.E. 700, (1895) (acceptance of payment); *Brown v. Buzan*, 24 Ind. 194 (1865) (breach of contract); *Tucker v. White*, 19 Ind. 253 (1862) (stay of judgment); *T.C. v. Review Bd. of Indiana Dept. of Workforce Development*, 930 N.E.2d 29 (Ind. Ct. App. 2010) (filing of appeal); *Jenkins v. Yoder,* 324 N.E.2d 520 (Ind. Ct. App. 1975) (statute of limitations); *Liberty Service, Inc. v. McKim*, 157 N.E.2d 582 (Ind. Ct. App. 1959) (termination of lease); *Keeling v. Board of Zoning Appeals of City of Indianapolis*, 117 Ind. App. 314, 69 N.E.2d 613, 618 (1946) (notice of hearing); *Davidson v. Lemontree*, 71 Ind. App. 215, 123 N.E. 177 (1919) (motion for change of venue); *Mathews Farmers' Mut. Live Stock Ins. Co. v. Moore*, 58 Ind. App. 240, 108 N.E. 155 (1915) (duration of insurance coverage); *Cheek v. Preston,* 34 Ind. App. 343, 72 N.E. 1048 (1905) (payment of rent); and *In Re Estate of Dunnick*, 855 N.E.2d 1087 (Ind. T.C. 2006) (petition for rehearing).

[11] For questions of contract law, the courts may deviate from the uniform, aforementioned rule if the parties' clear intent within the language of the contract was to include the first day. *See Pacific Mut. Life Ins. Co* 134 N.E. 290, 291 (a year-long life insurance policy beginning on May 14, 1917, had been in force a full year of 365 days, by the end of May 13, 1918, and after the expiration of that date was "after one year" of the life of the policy; the court noted that "if the appellant had intended to make the policy incontestable after one year, exclusive of the date when it was issued" then the appellant should have specified that date in the policy).

[12] In instances of ambiguity, when a statute is silent as to the method of computing time, Indiana Trial Rule 6(A) applies. *See T.C. v. Review Bd. of Indiana Dept. of Workforce Development*, 930 N.E.2d 29, 31 (Ind. Ct. App. 2010) (appellant argued that Indiana Code section 22-4-17-2 , which sets the time period for requesting a hearing before an Administrative Law Judge, is ambiguous because it is subject to "reasonable interpretations of calendar versus business days;" the reviewing court determined that where a statute is silent as to the method of computing time, Indiana Trial Rule 6(A) applies).

[13] Particular words such as "before," "between," "to," and "until," take on their own meaning and indications within the context of the issue: *See, e.g., Eshelman v. Snyder*, 82 Ind. 498 (1882) (time until a day named does not include that day); *Ardery v. Dunn,* 181 Ind. 225, 104 N.E. 299 (1914) (where process is to be served a stated number of days before the first day of the term, the first day of the term is to be counted as the last day of the period stipulated); *Fry v. Hoffman*,

54 Ind. App. 434, 102 N.E. 167, 168 (1913) (the word "between," when used to define a period of time between two named days, excludes the first and last day; the ordinary rule as to the computation of time by excluding one day of a period and including the other does not apply); and *Myers v. Winona Interurban Ry. Co.*, 50 Ind. App. 258, 98 N.E. 131 (1912) (time extended to March 3 did not include that day, as the word "to" is synonymous with "till" or "until," and is generally regarded as a word of exclusion).

[14] One Indiana case, which we find instructive, specifically considers the issue of how to regard the expiration of a period on a given date, albeit in the context of a term of office. In *Vogel v. State ex rel. Laud,* 107 Ind. 374, 8 N.E. 164 (1886) the appellee was commissioned as justice of the peace for four years beginning on April 17, 1882. One of the issues on appeal was when appellee's term as justice of the peace expired. Our Indiana Supreme Court noted that if April 17, 1882, was to be included as the start of the term, then the four-year term ended at midnight on April 16, 1886. If it did not begin on April 17, 1882, the term ended at midnight on April 17, 1886. *Id.* at 166. Our Indiana Supreme Court ultimately decided that appellee's term and duties began on April 17, 1882, thus "his term as justice of the peace expired at midnight of the sixteenth day of April, 1886," *id*, and did not include April 17, 1886. In so ruling, the court reasoned that the four years of the term must have ended before the expiration date of April 17.

[15] When, as we are here, we are faced with an issue of first impression, we may also consider persuasive guidance from similar out-of-state decisions. *See*

*DiMaggio v. Rosario*, 950 N.E.2d 1272, 1275 (Ind. Ct. App. 2011) (in instances where no past Indiana case law has addressed a particular issue, the Court of Appeals may look to decisions from other jurisdictions for instructive guidance). In *City of Overland Park v. Rice*, 567 P.2d 1382, 222 Kan. 693 (1977), the Supreme Court of Kansas held that the sixty-day suspension of defendant's driver's license, which began on October 4, 1971, was to be construed as a suspension for the period between October 4, 1971, and December 3, 1971. In so ruling, the court specifically stated that "the period of suspension in the present case ran from October 4, 1971, the date the order was effective, until the expiration of 60 days thereafter, December 3, 1971." *Id.* at 1386. The Kansas Supreme Court recognized that the exact sixty-day suspension ran through December 2, and ended at 12:00 a.m. on December 3, which was also designated as the expiration date.

[16] The evidence before us does not provide us with a distinct time-period for which King was suspended, no controlling words such as "until" or "to," and no clear case law for comparison. Based on the certified BMV record, it is evident that King's suspension went into effect on August 30, 2018; had he been pulled over for a violation on that day, it is of no question that he would have rightly been regarded as suspended. This understanding is in line with the reasoning adopted by the *Vogel* court. Our present case may be regarded as the inverse of the "first day excluded, last day included" rule because regardless whether the first day or last day is included and the other excluded as part of his suspension, King spends the same amount of days with his license suspended.

We have adopted this reasoning in the past when considering suspension cases in which the duration of suspension is clearly outlined as lasting for a certain amount of days. For example, in *Gibson v. Hernandez*, the appellee's driver's license was suspended from March 24, 2001 to June 22, 2001, for failure to provide proof of financial responsibility as requested by the BMV.[7] 764 N.E.2d 253, 254 (Ind. Ct. App. 2002), *trans denied*. When counting Hernandez's ninety-day suspension beginning on March 24, the ninetieth day fell on June 21, meaning that the suspension ran through the end of that day and ended at midnight; thus at 12:00 a.m. on June 22, her suspension ended. This suggests the effective date is the beginning of the suspension period, and includes the entirety of the day, such that the expiration date of the suspension excludes the whole of the last listed day.

[17] Based on the BMV manual's statement, which is not sufficiently instructive, the holding of the *Vogel* decision, our understanding of the general rule for computation of days in various legal contexts, and the persuasive guidance of the cited out-of-state case, we hold that King's suspension expired at 12:00 a.m. on October 24, 2018. *See City of Overland Park*, 567 P.2d at 695 (suspension must end by the stated expiration date). Based thereon, we conclude King's

---

[7] The statute authorizing driver's license suspension for failure to provide proof of financial responsibility is Indiana Code section 9-25-5-1(b). The statute further explains that "if the court fails to recommend a fixed term of suspension, or recommends a fixed term that is less than the minimum term of suspension required under this article, the bureau shall impose the applicable minimum term of suspension required under this article." Indiana Code section 9-25-6-3(d) then directs the Bureau of Motor Vehicles to suspend the person's driving privileges "for at least ninety (90) days and not more than one (1) year." Although the *Gibson* opinion states only that appellee's driver's license was suspended from March 24, 2001, to June 22, 2001, this time period constitutes ninety days, if counting from March 24; inclusion of June 22 as a full day would constitute the ninety-first day.

driver's license suspension was expired when Officer Hart initiated the traffic stop on October 24, 2018, and thus we reverse King's conviction of Class A misdemeanor driving while suspended.

# Conclusion

We hold that King's driver's license was not suspended when he was pulled over at approximately 11:30 a.m. on October 24, 2018, because his suspension expired at 12:00 a.m. on October 24, 2018. Accordingly, we reverse King's Class A misdemeanor conviction.

Reversed.

Robb, J., and Vaidik, J., concur.